716 A.2d 335

**STATE of Maryland et al.**

v.

**Frank G. HALL.**

No. 1230, Sept. Term, 1997.

Court of Special Appeals of Maryland.

Aug. 27, 1998.

Reconsideration Denied Sept. 29, 1998.

Alan D. Eason, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, on the brief), Baltimore, for appellants.

Neil J. Bixler (Verderaime & Dubois, P.A., on the brief), Baltimore, for appellee.

Argued before WENNER, SALMON and BYRNES, JJ.

WENNER, Judge.

Appellants, the State of Maryland (the State), and the Department of Corrections (DOC), appeal from summary judgment granted by the Circuit Court for Baltimore City in favor of appellee, Frank G. Hall (Hall). Although we are presented with a number of issues, we need address but two of them.

I. Did the trial court err in granting appellee's motion for summary judgment on the issue of false imprisonment?

II. Did the trial court err in granting Earl Beshears's, (Warden of the Eastern Maryland Correctional Institution), motion for summary judgment despite having found that Hall had been falsely imprisoned?

We shall answer the first question in the affirmative and the second in the negative, and both affirm and reverse the judgment of the circuit court.

## Facts

The facts are undisputed. On 17 September 1982, Hall was convicted of child abuse and sentenced to a term of fifteen years. Having served slightly less than ten years, Hall was granted parole on 2 July 1992. Unfortunately for society, Hall is a recidivist. On 30 September 1994, he was again charged with and convicted of child abuse, and sentenced to a term of seven years. As a result, Hall's parole was revoked, and the unserved portion of his initial sentence was reinstated. Since

only five years remained on the unserved portion of his reinstated sentence, the revocation of his parole did not extend his period of confinement. Nonetheless, the appropriate calculation of his confinement credits arose.[1]

In October of 1992, the statute governing "good time" credits was revised, doubling the "good time" credits earned. This, however, applied only to those confined after 1 October 1992. When Hall again became a guest of the State, it was to serve the sentence imposed for the offense committed while on parole. Accordingly, his "good time" credits were calculated at the post–1992 rate. Since the unserved portion of his first sentence had been reinstated, the two sentences were, in effect, being served concurrently. Consequently, it was concluded that Hall's "good time" credits should be calculated at the pre–1992 rate, because he was serving both pre- and post–1992 sentences. This resulted in the reduction of Hall's "good time" credits.

Dissatisfied with the manner in which his "good time" credits had been calculated, Hall filed a petition in the Circuit Court for Baltimore City for a writ of habeas corpus, claiming his "good time" credits had been miscalculated, entitling him to immediate release. The trial court agreed that his "good time" credits should have been calculated at the post–1992 rate,[2] determined that Hall had been deprived of his liberty without his consent for an additional 108 days, and ordered his immediate release. Upon his release, Hall filed a complaint in the Circuit Court for Baltimore City, charging the Warden

---

**1.** Diminution of confinement credits are commonly known as "good time" credits. Such credits are awarded for behavior deemed beneficial. Such credits may be earned from educational programs, special projects, and the like. Hall's accumulation of "good time" credits is here at issue.

**2.** The circuit court was correct. In *Beshears v. Wickes,* 349 Md. 1, 706 A.2d 608 (1998), the Court of Appeals was confronted with a practically identical situation. The Court determined that one released on parole for a pre–1992 term of confinement, and then confined for a term imposed for a post–1992 conviction, is entitled to have "good time" credits calculated at the post–1992 rate, despite the unserved portion of the first sentence overlapping the second sentence being imposed.

with violating Article 24 of the Maryland Declaration of Rights, and the Fourteenth Amendment of the United States Constitution, pursuant to § 1983 of Title 42 of the United States Code, and charging appellants with false imprisonment. The parties filed cross motions for summary judgment. Appellants' and Beshears's motions were granted, and Hall's was denied. Hall then filed a motion to reconsider. This resulted in his motion for summary judgment being granted as to his claim of false imprisonment against appellants, but denied as to Beshears. A trial for damages was then held, and Hall was awarded $54,000 [3]. This appeal followed.

## I.

A motion for summary judgment may be granted only "if the motion and response show that there is no genuine dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law." Md. Rule 2–501(e). "The trial court will not determine any disputed facts, but rather makes a ruling as a matter of law" (citations omitted). Therefore, in reviewing the grant of a motion for summary judgment, "[t]he standard of appellate review ... is whether the trial court was legally correct." *B G & E v. Lane,* 338 Md. 34, 43, 656 A.2d 307 (1995).

It is well established in Maryland that "the necessary elements of a case for false imprisonment are a deprivation of the liberty of another without his consent and without legal justification." *Great Atl. & Pac. Tea Co. v. Paul,* 256 Md. 643, 654, 261 A.2d 731, 738 (1970). Although the parties concede that our appellate courts have not yet examined such a situation, appellants point out that a situation in which an officer makes an arrest, mistakenly believing he is authorized to do so, has been addressed. Although not dispositive, we will be provided with guidance by such cases.

---

3. On post trial motion, the judgment was reduced to $50,000 due to the fact that the State waived its immunity up to the amount of its insurance—$50,000. *See* COMAR 25.02.02.02D.(1).

Recently, the Court of Appeals said in *Ashton v. Brown,* 339 Md. 70, 660 A.2d 447 (1995), that "a police officer carrying out either an arrest under warrant or a warrantless arrest is not liable for false imprisonment in connection with that arrest if the officer had legal authority to arrest under the circumstances." *See Montgomery Ward v. Wilson,* 339 Md. 701, 721, 664 A.2d 916(1995).

> An arrest made under a warrant which appears on its face to be legal is legally justified in Maryland, even if, unbeknownst to the arresting police officer, the warrant is in fact improper. (Citation omitted). Moreover, a police officer has legal justification to make a warrantless arrest where he has probable cause to believe that a felony has been committed, and that the arrestee perpetrated the offense. Thus, with respect to both of these types of arrest, legal justification to arrest may depend, in part, upon the arresting officer's good faith and reasonable belief in his authority to arrest.

*Ashton,* 339 Md. at 120, 660 A.2d 447.

■■■ Under certain circumstances, both common and statutory law permit a citizen's confinement. Thus, if an officer makes an arrest, believing he or she has authority to do so, such an arrest is not false imprisonment. We believe this also extends to the DOC, and to the Warden.[4] The DOC is an administrative agency charged with determining an inmate's "good time" credits. In other words, the "good time" credits "earned by [Hall] . . . during his confinement . . . is peculiarly within the province of the appropriate officials in the [DOC], to be determined by that agency under established policies and in accordance with the merits of each case." *Bartholomey v. State,* 267 Md. 175, 188, 297 A.2d 696 (1972). In the instant

---

4. The Court of Appeals of Ohio for Franklin County recently said: "[T]he elements for wrongful imprisonment for an inmate beyond a lawful term of incarceration would be: (1) expiration of the lawful term of confinement, (2) intentional confinement after the expiration, and (3) knowledge that the privilege initially justifying the confinement no longer exists." *Corder v. Ohio Dept. of Rehab. & Corr.,* 94 Ohio App.3d 315, 640 N.E.2d 879, 881 (1994).

case, the DOC was acting within its legal authority in determining the "good time" credits due Hall, and we find nothing in the record indicating that it intentionally confined Hall after the expiration of his sentence.[5]

Although the trial court correctly said, the first question to be resolved in determining whether collateral estoppel is applicable is whether the issue decided in the prior adjudication was identical with the one presented in the present action, it incorrectly said, "the issue decided ... in the habeas proceeding was [whether Hall was entitled] to 370 days of good conduct credits." The question before us, however, is whether the DOC had "legal authority" to confine Hall. As we have explained, it did.

## II.

As cross-appellant, appellee claims that the trial court erroneously granted the Warden's motion for summary judgment because, as a matter of law, Hall had been confined illegally. In view of our previous discussion, we do not agree. Accordingly, we shall affirm the grant of the Warden's motion for summary judgment.

**JUDGMENT AFFIRMED IN PART AND REVERSED IN PART; COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**

SALMON, Judge, dissenting.

As I read the majority opinion, the Court holds that, in order for appellee to prove the tort of false imprisonment (Counts 1 and 2), he was obliged to show that the State and the Department of Corrections knew, or should have known, that he was being illegally detained after his sentence had

---

5. In fact, the record contains evidence to the contrary. When Hall began serving his second sentence, it was one imposed post–1992. Accordingly, his "good time" credits were calculated at the post-1992 rate. It was only when the unserved portion of his pre–1992 sentence was reinstated when the question of the appropriate calculation of Hall's "good time" credits arose.

expired. I do not believe that appellee had any such obligation. The Court of Appeals said in *Ashton v. Brown*, 339 Md. 70, 660 A.2d 447 (1995):

> As with other intentional torts, the plaintiff seeking to establish false imprisonment need not prove that the defendant intended to act wrongfully; "the essence of the tort consists in depriving the plaintiff of his liberty without lawful justification, and the good or evil intention of the defendant does not excuse or create the tort." *Mahan v. Adam*, 144 Md. 355, 365, 124 A. 901 (1924).

*Id.* at 121 n. 25, 660 A.2d 447. Here appellee proved that he was deprived of his liberty by the Department of Corrections without lawful justification. I would therefore affirm.