794 A.2d 735

**James GLOVER**

v.

**STATE of Maryland.**

**No. 2647, Sept. Term, 2000.**

Court of Special Appeals of Maryland.

March 28, 2002.

314

Paul A. Weykamp, Baltimore, for appellant.

Glen T. Marrow, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., on the brief), Baltimore, for appellee.

Argued before DEBORAH S. EYLER, PAUL E. ALPERT (Ret'd, Specially Assigned), JOHN F. McAULIFFE, (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

The Circuit Court for Baltimore City granted summary judgment in favor of the State of Maryland, the appellee, in a civil suit brought against it by James Glover, the appellant. On appeal, the appellant poses one question for review, which we have revised slightly, as follows:

Did the circuit court err in ruling that the Division of Pretrial Detention Services was not negligent, as a matter of law, and did not violate his constitutional rights, as a matter of law, by detaining him for 30 days without a warrant, a bail hearing, or legal representation, when there was information in the State's files showing that he was not the proper person to be detained?

For the following reasons, we shall affirm the judgment of the circuit court.

## FACTS AND PROCEEDINGS

On October 4, 1996, the appellant began serving a 30-day sentence for battery, at the Baltimore City Detention Center ("BCDC").

A little more than two weeks later, on October 18, 1996, the appellant and the Division of Pretrial Detention Services ("DPDS") were served with a directive, signed by the Baltimore City Sheriff, bearing the caption of the Circuit Court for Baltimore City, in the case of *State of Maryland v. James Glover*, SID [State Identification Number] 91140962." This document directed the Warden of the BCDC to take into custody and hold "James Glover, AA/M DOB 8/13/58," until

further action of the circuit court, on the authority of "Bench Warrant No. 896236002," signed by a judge of the circuit court on August 23, 1996, for failure to appear on a charge of "Unauthorized Use Theft." For purposes of convenience, we shall hereinafter refer to this directive as a "detainer."[1]

Pursuant to the detainer, the appellant was held in the BCDC until December 4, 1996, when DPDS produced him to the circuit court on the unauthorized use charge. Apparently, the circuit court determined at that time that the appellant was not the "James Glover" in Case Number 896236002, for whom the bench warrant was issued, and ordered the appellant released from custody. The record before us does not contain the transcript of the proceedings on December 4, however, and we cannot ascertain precisely the basis for the circuit court's conclusion. In addition, although there is a vague allusion in the record to the appellant having filed a habeas corpus petition in the circuit court some time between October 18 and December 4, the record in this case does not contain such a petition. At oral argument before this Court, the appellant's counsel stated, when asked, that the appellant filed a petition for writ of habeas corpus, but it had not yet been ruled on by the circuit court when he was brought before the court on December 4.[2]

---

1. The record in this case does not include the bench warrant or a copy of it. It includes a copy of the detainer, but erroneously labels it as being a "bench warrant." In the motions filed in the circuit court and in their briefs, the parties refer to the detainer and the bench warrant interchangeably, as if they are the same document.

   Because we may take judicial notice of the circuit court records in the case in which the bench warrant was issued, *see Irby v. State*, 66 Md.App. 580, 585, 505 A.2d 552 (1986), we obtained and reviewed a copy of the August 23, 1996 bench warrant. The bench warrant references "Case Number 896236002," and describes the defendant by name ("James Glover"), address, birthdate (8/13/58), race, and sex. It does not list a "State Identification Number" but does include "Police Identification No. 063857."

2. The circuit court record in Case Number 896236002 reveals that on December 4, 1996, the court issued a second bench warrant, for "James Glover (AKA) Damon Colman, Jr." The second bench warrant sets out SID No. 991140962, which is crossed through and replaced with a

On November 12, 1999, the appellant filed a civil action in the Circuit Court for Baltimore City naming the "City of Baltimore" and the State as defendants. He alleged negligence and a violation of his constitutional rights against both defendants.[3] The appellant later filed a first amended complaint that was essentially the same as his initial complaint.

The "City of Baltimore" filed a motion to dismiss the first amended complaint, which was granted. That ruling is not being challenged on appeal.

In his first amended complaint, the appellant alleged that after he was served with the detainer, on October 18, 1996, he told people at the BCDC he was not the "James Glover" wanted on the unauthorized use charge, and that a mistake must have been made. He further alleged that DPDS records contained information that, if examined, would have confirmed that he was not the "James Glover" wanted on the unauthorized use charge; however, notwithstanding his complaints, no one at DPDS took any action to investigate the matter. The appellant asserted that DPDS's failure to investigate and take action was a breach of duty that resulted in his being detained beyond his scheduled release date of November 3, 1996, in violation of his constitutional rights to freedom and liberty.

The State filed an answer raising numerous defenses and thereafter filed a motion for summary judgment, supported by two affidavits. One affidavit was by a records custodian for the DPDS, who attested that four attached records were authentic and were kept by the DPDS in the ordinary course of business. The records are: a two page computer print-out that is the "CJIS" (inmate history) record for the appellant; the detainer; a DPDS release form dated December 4, 1996; and a release warrant, dated December 4, 1996, and signed by the Clerk of Court of the Circuit Court for Baltimore City,

---

different SID number. It also contains three different "Police Identification" numbers. The record in that case does not contain a petition for writ of habeas corpus.

**3.** The appellant did not identify the source of the constitutional rights he alleged were violated (*i.e.*, federal, state, or both).

directing that the appellant be released from the DPDS because he is the "wrong person."

The second affidavit was executed by Ralph Logan, Warden of the BCDC. Warden Logan attested, *inter alia*, that the appellant was served with the detainer on October 18, 1996, and that it bears his State Identification Number, which no other inmate has, because the number is unique to each prisoner and is linked to the prisoner's fingerprint. Thus, the detainer "unquestionably identified [the appellant] as the man that the [circuit court] wanted BCDC officials to detain and produce before the [circuit] court in order to answer to charges contained in the [bench] warrant."

Warden Logan went on to attest that when a bench warrant is issued for a defendant's failure to appear in court, "it is the serving party's responsibility to notify the [circuit court] that the warrant has been served and executed." Thus, in this case, the Baltimore City Sheriff's Office, which served the detainer directing the warden to hold James Glover, SID No. 991140962, on the charges for which bench warrant 896236002 was issued, was responsible for notifying the circuit court that service had been effected. Once that occurred, the circuit court set the December 4, 1996, date for the "James Glover" who was the subject of the bench warrant to be brought before it. Finally, Warden Logan asserted that when the BCDC has custody of an inmate, and is served with a detainer directing it to keep the inmate in custody, it does not have the authority to release the inmate except upon order of the circuit court directing it to do so.

The State used the affidavit evidence to argue that the undisputed facts established that the appellant indeed was the person for whom the detainer had been issued—even if the detainer should have been issued for another "James Glover." Therefore, the DPDS was lawfully holding the appellant in custody after November 4, 1996, when he finished serving his 30–day sentence for battery, until December 4, 1996, when he was brought before the circuit court on the charges in Case Number 896236002. Furthermore, under the circumstances,

the DPDS had no authority to release the appellant from custody without being directed to do so by the circuit court.

The State asserted that, "so long as an officer or a law enforcement agency has apparent legal justification or probable cause to detain a party, there is no further obligation to go beyond that apparent authority to insure that the suspect has been properly identified." It argued that it was entitled to summary judgment on the negligence claim because it had no legal duty to take any action beyond what it did, and no authority to release the appellant in any event, and likewise was entitled to summary judgment on the constitutional violation claim because it deprived the appellant of his liberty under a facially valid arrest warrant.

For reasons not clear from the record, the appellant was not served with the State's motion for summary judgment, and the motion was granted upon default. Thereafter, the appellant promptly filed a motion to vacate. The court granted it, and then gave the appellant time to file an opposition.

The appellant's opposition to the State's motion for summary judgment was not supported by an affidavit or any sworn testimony, as required by Md. Rule 2–501(b). In essence, the opposition was a narrative version of the allegations in the first amended complaint.[4] The appellant stated, "there was ample evidence in the possession of the State of Maryland (and the state courts and the DPDS) that showed that [he] was not the person subject to the warrant, and despite this evidence, [the State] failed to confirm the error in identity and to notify the court of the error." The appellant did not specify, however, what the "ample evidence" was. He further alleged that he told someone, or more than one person, at the DPDS (without identifying whom) that his date of birth and address "did not match the information on the 'James Glover' they intended to hold on the charges for which [the appellant] was wrongly held," that he repeated this assertion

---

4. Neither the first amended complaint nor the original complaint was verified.

many times, and that a review of his file would have revealed the discrepancy. He asserted that the DPDS was obligated to do more than check to see that his State Identification Number matched that on the detainer. Specifically, he argued that "[t]he onus of proper identification of a criminal suspect does not rest exclusively with judges, as the DPDS would have this court hold. The duty of proper identification rests in all departments involved in the criminal justice system."

The documents submitted by the State in support of its motion show that the detainer states "James Glover's" date of birth as "8/13/58" while the CJIS record for the appellant and the appellant's release order give his date of birth as 8/12/54. The detainer does not give an address for "James Glover." As we have explained, we cannot determine from the record the basis on which the circuit court concluded, on December 4, 1996, that the appellant was not the "James Glover" who was charged with unauthorized use and failed to appear on that charge on August 23, 1996.

The circuit court held a hearing on the State's motion for summary judgment on January 2, 2001. At the conclusion of the hearing, the court ruled that the State had not been negligent, as a matter of law, and had not violated the appellant's constitutional rights, as a matter of law. The court granted the motion, and later reduced its ruling to a written order. The appellant noted a timely appeal.

## STANDARD OF REVIEW

Under Md. Rule 2–501, the circuit court may grant summary judgment when there is no genuine dispute of material fact and on the undisputed material facts, the moving party is entitled to judgment in his favor as a matter of law. Likewise, the circuit court may grant summary judgment when disputed material facts are assumed in favor of the non-moving party, and on those facts, the moving party still is entitled to judgment in his favor as a matter of law. *King v. Board of Educ.*, 354 Md. 369, 376, 731 A.2d 460 (1999); *Bowen v. Smith*, 342 Md. 449, 454, 677 A.2d 81 (1996); *Dobbins v. Washington*

*Suburban,* 338 Md. 341, 344–45, 658 A.2d 675 (1995); and *Baltimore Gas & Elec. Co. v. Lane,* 338 Md. 34, 42–43, 656 A.2d 307 (1995). Whether there is a genuine dispute of material fact and whether on the undisputed, or assumed, material facts the moving party was entitled to judgment are questions of law that we review for legal correctness under a broad *de novo* standard of review. *Fister v. Allstate Life Ins. Co.,* 366 Md. 201, 210, 783 A.2d 194 (2001); *Heat & Power Corp. v. Air Products & Chemicals, Inc.,* 320 Md. 584, 591, 578 A.2d 1202 (1990).

## DISCUSSION

The circuit court ruled that the State, through the DPDS, owed no duty of care to the appellant, and therefore was not liable to him for negligence, as a matter of law. The court also ruled that the State, through DPDS, had not deprived the appellant of his liberty without legal justification for doing so, and therefore could not be liable to him for violation of his constitutional rights, as a matter of law.

The circuit court appears to have accepted the undisputed facts asserted by the State by way of affidavit, and to the extent any facts were contested, assumed those facts as alleged by the appellant in his first amended complaint (even though he did not meet his obligation to submit admissible evidence by affidavit or other sworn testimony). Thus, the court in effect ruled that taking into account the facts attested to by the State employees, which were not refuted by the appellant, and assuming as true the appellant's version of events as alleged, the State nevertheless was entitled to judgment in its favor on both counts. We agree.

On its face, the detainer directed that the appellant, identified by the State Identification Number assigned to him, be held in custody. Apparently, the circuit court issued a bench warrant for another James Glover, but the Baltimore City Sheriff's Office issued a detainer for the appellant. The appellant concedes that the DPDS was authorized, pursuant to the detainer, to hold him in custody. He maintains, however,

that once he pointed out to people at the BCDC that he was not the person the detainer really was meant for, and the birthdate for "James Glover" on the detainer was not his birthdate, the DPDS became duty bound to search its records, determine whether he was or was not the "James Glover" the court had issued the bench warrant for, and contact the court with that information. That alleged breach of duty was at the heart of the appellant's negligence claim.

We agree with the circuit court that the law does not impose on the DPDS/BCDC a general duty of care to investigate and notify the circuit court about suspected mistakes in detainers issued by the Baltimore City Sheriff's Office.

The governmental entities comprising the Maryland correctional system, which collectively are responsible for detaining or confining adults charged with or found guilty of crimes, are creatures of statute. As such, their powers are limited to those expressly granted by the General Assembly, or those implied by necessity. *Huffman v. State Roads Comm'n,* 152 Md. 566, 584, 137 A. 358 (1927) ("[W]hile such agencies are governmental, they have no powers but such as are expressly delegated to them by the organic or statutory law of the government of which they are a part, or such as are by implication essential to the full and adequate exercise of such express powers.").

The Department of Public Safety and Correctional Services ("DPSCS"), one of the principal departments of the Executive Branch of the State, *see* Md.Code (1995 Repl.Vol., 1996 Supp.), section 8–201(b)(12) of the State Government Article ("SG"), is charged with overseeing the Maryland correctional system. *See generally,* SG § 8–201(a). Within the DPSCS, there are multiple individual units, including DPDS. Md.Code (1993 Repl.Vol., 1996 Supp.), Art. 41, § 4–102(a).[5]

---

**5.** Because the events in this case took place in 1996, our citations are to Article 41, Title 4, of the Maryland Code, which was in effect at that time. In 1999, that title was repealed and reenacted in the new Correctional Services Article. The recodification did not result in any

BCDC is a subdivision of the DPDS. Art. 41, § 4–1403(b)(2) and § 4–1414.[6]

DPDS and its subdivisions were established and governed by Subtitle 14 of Article 41.[7] Article 41, § 4–1403(c), states the authority of DPDS as being

the same authority with regard to the custody of its inmates and the operation of the Baltimore City Detention Center . . .

(2) As the sheriffs have under this Code . . . with regard to the detention of [inmates] committed to their custody and the operation of [local correctional] facilities.

With respect to the detention of inmates committed to their custody, sheriffs are authorized and are duty bound to "keep safely [each individual] committed to [their] custody by lawful authority until [the individual] is discharged by due course of law." Md.Code (1994 Repl.Vol., 1996 Supp.), Art. 87, § 45. Likewise, the DPDS Commissioner is vested with the authority, and is under an expressly imposed duty, to "safely keep any [inmate] committed or transferred to the custody of the Commissioner until the [inmate] is discharged in accordance with law[.]" Art. 41, § 4–1404(c)(2).

---

substantive changes to the law governing the Maryland correctional system, however.

6. DPDS was created due to "an important public need to centralize and coordinate the provision of services to those persons on a pretial status in Baltimore City . . . [because] the City of Baltimore does not have the financial resources to fund the Baltimore City Jail at a level sufficient to meet the needs of those incarcerated." Art. 41, § 4-1401(c) & (d). DPDS is subdivided into three entities: (1) Pretrial Release Services Program, (2) Baltimore City Detention Center, and (3) "a centralized booking facility for Baltimore City." Art. 41, § 4–1403(b) and 4–1414(a). BCDC is a "pretrial detention facility for any person committed or transferred to the custody of the [DPDS] Commissioner." Art. 41, § 4-1407(b). Also, the Secretary of DPSCS may authorize any inmate held in custody under any unit of the DPSC to be housed at the BCDC.

7. DPDS is now governed by Title 5 of the Correctional Services Article, §§ 5-101 to 5-406.

At common law, one of the sheriff's principal duties was "to act as the jailor of the shire or county in which he served." *Harford County v. University of Maryland Medical System,* 318 Md. 525, 528, 569 A.2d 649 (1990). Thus, he was the "custodian of all persons arrested and charged with a criminal offense pending their trial before the court having jurisdiction over them," *id.,* and he was subject to criminal penalties for releasing a person from his lawful custody. *Baumgartner v. State,* 21 Md.App. 251, 259–60, 319 A.2d 592 (1974).

In Maryland, the General Assembly has codified the common law duties of the sheriff and in some instances has transferred the duties to other officials, such as wardens. It remains the case, however, that a sheriff has a non-discretionary, ministerial duty to receive and safely keep all prisoners properly committed to his custody until discharged in accordance with law. *See Cocking v. Wade,* 87 Md. 529, 40 A. 104 (1898) (holding that a sheriff did not violate standards of protection by failing to remove a prisoner from jail to protect him from a violent mob because, under Art. 87, § 45, the sheriff was required to keep the prisoner in the jail, and had no discretion to move him). In *Baumgartner v. State, supra,* this Court observed:

> Only a court order or a statute can relieve a sheriff of his responsibility to keep persons committed to his charge in *arcta et salva custodia,* strict and safe-keeping-or . . . "strict confinement under lock and key."

21 Md.App. at 263, 319 A.2d 592 (citation omitted).

■ The governing statutes make plain that DPDS is authorized to and shall, *i.e.,* has a statutorily imposed duty to, safely detain individuals committed to its custody by "lawful authority," and until the individual is discharged "by due course of law." Thus, so long as an individual is lawfully committed to DPDS's custody, DPDS must detain the person and is without the authority to discharge him, except by due course of law, that is, when authorized to do so according to a court directive.

Again, the appellant does not dispute that the detainer in this case was facially valid and that DPDS acted within its authority in holding him in custody pursuant to that detainer. Given that DPDS does not have any power to discharge an inmate it is lawfully holding, except when the inmate is discharged by due course of law, the statutes creating the DPDS and defining its powers and duties cannot reasonably be read to impose a general duty to investigate the accuracy of a facially valid detainer and to bring to the court's attention, in the appellant's words, "any evidence showing the wrong person is being held under a warrant."

First, it would not be reasonable to imply a general duty to investigate as owing by DPDS to inmates in its custody when, regardless of whatever an investigation by DPDS might show, it nevertheless would lack the authority to release the inmate.

Second, notwithstanding the appellant's assertion that he had no avenue of relief other than to go to "DPDS officials on [the] premises," the law gave him a direct avenue of relief—a petition for writ of habeas corpus. "The writ of habeas corpus searches the record back of the commitment. It lays a duty on the court to explore the foundations, and pronounce them true or false." *Hill v. United States*, 298 U.S. 460, 467, 56 S.Ct. 760, 80 L.Ed. 1283 (1936).

The DPDS did not owe the appellant a general duty of care to investigate its records to ascertain whether a facially valid detainer identifying him by State Identification Number was mistakenly issued. Accordingly, the appellant's negligence claim against DPDS was not viable, as a matter of law. *See Walpert, Smullian & Blumenthal, P.A. v. Katz*, 361 Md. 645, 655, 762 A.2d 582 (2000) (duty of care is an essential element of a cause of action for negligence); *Griesi v. Atlantic Gen. Hosp. Corp.*, 360 Md. 1, 12, 756 A.2d 548 (2000) (same).[8]

---

8. We also note that the appellant did not offer any evidence, or make any allegation, that he had a special relationship with any person at the DPDS that gave rise to a special duty of care. *Cf. Williams v. Mayor and City Council of Baltimore*, 359 Md. 101, 753 A.2d 41 (2000).

■ Finally, the DPDS could not be held liable for violating the appellant's constitutional rights to freedom and liberty, either under the federal constitution or the Maryland Declaration of Rights, when it was detaining him by lawful authority upon the direction of the circuit court and pursuant to a facially valid detainer. *Ashton v. Brown,* 339 Md. 70, 119–20, 660 A.2d 447 (1995); *Great Atlantic & Pacific Tea C. v. Paul,* 256 Md. 643, 654, 261 A.2d 731 (1970); *Green v. Brooks,* 125 Md.App. 349, 366–67, 725 A.2d 596 (1999).

The circuit court properly granted summary judgment in this case.

**JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY AFFIRMED.**

**COSTS TO BE PAID BY THE APPELLANT.**