869 A.2d 420

**Evelyn Yulonda DETT**

v.

**STATE of Maryland, et al.**

**No. 286, Sept. Term, 2004.**

Court of Special Appeals of Maryland.

March 1, 2005.

Randall J. Craig, Jr., Baltimore, for appellant.

Glenn T. Marrow (J. Joseph Curran, Jr., on brief), for appellee.

Panel MURPHY, C.J., DAVIS, EYLER, DEBORAH S., JJ.

DEBORAH S. EYLER, J.

In the Circuit Court for Baltimore City, Evelyn Y. Dett sued the State of Maryland, the Department of Public Safety and Correctional Services ("Department"), the Division of Pretrial Detention and Services ("DPDS"), the Baltimore City Detention Center ("the Detention Center"), the Central Booking and Intake Center ("Central Booking"), and the Division of Parole and Probation ("DP & P"), the appellees, for false imprisonment and violation of her state constitutional right to due process. The court granted summary judgment in favor of the appellees.

Dett challenges that ruling in two questions presented that can be distilled into one: Did the circuit court err in granting summary judgment for the appellees?[1] For the following reasons, we answer "yes" and therefore shall reverse the judgment of the circuit court and remand the case for further proceedings.

## FACTS AND PROCEEDINGS

The facts and reasonable inferences presented to the court in the summary judgment record, and viewed most favorably to Dett, show the following.

---

1. The questions as phrased by Dett are:

 I. Whether the State can be liable for false imprisonment, wrongful detention and related constitutional violations under Article 24 of the Maryland Declaration of Rights when it had actually initiated an investigation surrounding the circumstances of the Appellant's arrest and continued to detain the Appellant even after it determined that the Appellant was the wrong person in custody?

 II. Whether facts presented relating to the question of the Appellant's procedural due process rights were sufficient to raise a genuine issue of material dispute.

On March 7, 2003, at 5:00 p.m., Dett was driving near the 100 block of North Schroeder Street, in Baltimore City, when she was stopped by Officer Darren Moore, of the Housing Authority of Baltimore City ("HABC") Police Department, for a traffic violation. Dett identified herself by her name. Officer Moore contacted his dispatch officer to run a routine background check.

The background check revealed an open violation of probation bench warrant issued on July 31, 2002, by a judge of the Circuit Court for Baltimore City, for "Vanessa Hawkins a/k/a Evelyn Dett," having "SID No. 381961," in Case Number 802134014 ("the bench warrant"). An SID (State Identification) number is a unique identification number that Central Booking issues to each person processed there. The number is assigned based on the person's fingerprint. *See Glover v. State,* 143 Md.App. 313, 318, 794 A.2d 735 (2002).

Believing Dett to be the subject of the bench warrant, Officer Moore arrested her and took her to Central Booking. Dett arrived at Central Booking at 5:50 p.m., and was taken to a booking station.

According to Central Booking's "Offender Activity Log," Dett was booked at 6:15. At 6:26, she was moved from the booking station to a photograph station. Her photograph was taken at 6:27. At 6:32 p.m., an entry in the "Offender Activity Log," under "Offender Delays," states: "DO NOT RLSE SUBJECT BOOKED ON CIRCUIT # 802134014." A similar entry appears at 6:35, by the same person, on an "Offender Detainer Information Report." These entries were prompted by a "commitment order" issued by the Baltimore City Sheriff that evening to DPDS, which administers the Detention Center, directing the Detention Center to detain "Vanessa Hawkins" a "B/F" having "SID No. 381961" and a date of birth of July 11, 1963, to "await further action [by the] Circuit Court for Baltimore City." The commitment order states it was issued on March 7, 2003, pursuant to "Bench Warrant No. 802134014."

At 6:41 p.m., Dett was moved to a fingerprint station. Her fingerprints were taken at 6:43. One minute later, they were "[u]ploaded to CRC." It is apparent that the "uploading" of Dett's fingerprints into the computer database generated SID number 2413966, not SID number 381961, because an "offender check" was made on SID number 2413966 at 7:05, and, according to Central Booking's "Offender Criminal History Information Report," three computer searches (an "IDENT/INDEX" search, a "RAP SHEET CONDENSED" search, and a "RAP SHEET NARRATIVE" search) were made at 7:22, using that SID number. The "Offender Activity Log" and all other computer documents for Dett generated by Central Booking, and later by the Detention Center, bear SID No. 2413966.

As an apparent result of the discrepancy between the SID number on the bench warrant and Dett's SID number, at 7:22 p.m., a "Flag" was "Inserted" into Dett's computer identification record. At a time that evening not referenced in the "Offender Activity Log," Central Booking generated an "Offender Identification Information Report" showing that Dett's SID number was 2413966, not 381961.

Also sometime that evening, not timed, Debara Driver of Central Booking filled in the top section of a "Problem Paperwork Notice" for "Vanessa Hawkins," with SID numbers "2413966" and "381961," stating: "[D]efendant has 2 sid # 's[.] Please clarify with fingerprint the correct [number] to be used." That same evening (again not documented by time), Driver prepared an "SID PROBLEM FORM" for "Vanessa Hawkins," having SID numbers "2413966 and 381961," on which she wrote:

[D]efendant has 2 sid # 's—commitment has been entered into the system under 2413966. I contacted fingerprint who insisted that this is the correct # . I spoke to Ada who said that they could not do anything until Monday 3/10/03.

At 7:33 p.m., Dett was moved to a group cell, where she remained until 1:31 a.m. (Saturday, March 8), when she was "released" to the Detention Center, *i.e.,* moved there from

Central Booking. Several reports were generated at that time, all under SID number 2413966, among them: an "Offender Personal Property Information Report," an "Offender Detainer Information Report," an "Offender Arrest Information Report," and an "Offender Booking Information Report." The latter report gives Dett's birthday as February 6, 1962, not July 11, 1963, as stated in the bench warrant. It also gives a social security number, weight, height, and address for Dett.

A "Bed Entry Completed" notation was made at 4:12 a.m. A little more than two hours later, at 6:19, someone at the Detention Center made an "Identification/Index System Central Repository Inquiry," into "Maryland CJIS," for SID number 2413966. The search showed "No exact matched record on file." Two minutes later, the person made an inquiry for SID number 381961—the number for the person who was the subject of the bench warrant. That search did not match any of the information generated until then on Dett and SID number 2413966. It showed the subject's name was Vanessa Ann Hawkins but that she used the alias Evelyn Y. Dett. It gave her date of birth as July 11, 1963—not February 6, 1962—but cautioned that she used an alias date of birth of February 6, 1962. It further showed that Hawkins was using two social security numbers (neither of which matched Dett's social security number), that she had an assigned FBI number (which Dett did not), that she had prior contacts with Central Booking in 1983, 1997 (twice), 1998 (three times), 1999 (twice), and 2002 (when Dett had no prior contacts), and that her address and height were not the same as Dett's.

At 6:23 a.m., Dett's "release" from Central Booking to the Detention Center was entered into the "Offender Activity Log" as "completed," and she was documented as having been moved.

There are no further entries for Saturday, March 8 and none at all for Sunday, March 9. On Monday, March 10, two entries were added to the March 7 "Problem Paperwork Notice." One states: "these are two different people. Cor-

rect sid # 2413966 for Vanessa Hawkins DOB 2–6–1962, sid # 381961 belongs to Evelyn Dett who used Vanessa Hawkins as AKA DOB 7–11–63."[2] The other, also untimed, states, in apparent response, and referring to Dett's "release" from Central Booking to the Detention Center:

[Y]ou still did not tell us which sid is correct for Vanessa Hawkins born 2–10–62 # 2413966 is that the correct sid # also the DOB on the release is for the inmate w[ith] DOB of 7–11–63 but uses the DOB of 2–6–62. We need to have this lady fingerprinted again since the release had the DOB different from what is on the offender booking sheet.

There is no further activity documented on Monday, March 10.

On Tuesday, March 11, at 10:27 a.m., a staff employee of DPDS sent a facsimile to "Bonnie," in the circuit court, requesting a "court seal & true test" for "Vanessa Hawkins," SID number 2413966, case number 802134014. Sometime that same day, the Sheriff issued a document to the Detention Center directing the release from custody of "Vanessa Hawkins" with SID number 2413966, in case 802134014, stating "Wrong Defendant."

Although the parties in their briefs have made reference to a court order issued that day, releasing Dett, there is no such order in the record, and they appear to be referencing the "release" issued by the Sheriff.[3] A DPDS "Release Form" signed by four employees, at times ranging from 10:57 that morning to 1:00 that afternoon, states that, upon examining "the commitment papers and computer record" for "Vanessa Hawkins," SID number 2413966, they had "determined that [she] should be released from the Division of Pretrial Deten-

---

**2.** The author of this entry incorrectly noted that *Evelyn Dett* used the alias of *Vanessa Hawkins.* In fact, it was *Vanessa Hawkins* who was using the alias of *Evelyn Dett.*

**3.** The words "received release" and the date "3–11–03" are written at the bottom of the "Problem Paperwork Notice." Those references too appear to be to the release form issued by the Sheriff, not to a court order.

tion and Services. . . ." The DPDS "Release Form" shows that Dett in fact was released from custody at 3:00 p.m.

From the time she was arrested forward, Dett was protesting, saying she was not the person who was the subject of the bench warrant. At Central Booking, she was told that, if her fingerprints did not match the fingerprints of the warrant suspect, she would be released. When the fingerprints did not match, however, she was not released, and instead was moved to the Detention Center.

On December 12, 2003, Dett filed suit in the Circuit Court for Baltimore City against the State; the Department; DPDS; the Detention Center; Central Booking; and DP & P, for false imprisonment and violation of her due process rights under Article 24 of the Maryland Declaration of Rights. She alleged that she was held in custody at Central Booking and the Detention Center without her consent, without legal justification, and without being charged with a crime and taken before a commissioner, and that she suffered injuries as a result, for which she sought damages, reasonable attorneys' fees, and expungement of her criminal record.[4] She demanded a jury trial.[5]

On March 1, 2004, without filing an answer and before any discovery was undertaken, the appellees jointly filed a motion for summary judgment and memorandum of law. The motion was supported by documents generated by Central Booking and the Detention Center; the bench warrant, "commitment order," and the Sheriff's "release"; and an affidavit by Susan Murphy, Assistant Warden assigned to Central Booking.

---

4. In a third, separately stated, count, Dett alleged that her claims for damages against the appellees as state agencies were permitted by the Maryland Tort Claims Act (MTCA), Md.Code (1999), section 12–101 *et seq.* of the State Government Article. This count does not set forth a separate cause of action, but merely explains the basis for Dett's assertion that she can recover damages against the State.

5. Dett subsequently amended her complaint to increase the *ad damnum* clauses for her false imprisonment and constitutional tort claims.

The appellees asserted that the material facts were not in genuine dispute and, on those facts, they had legal justification to hold Dett in custody. Specifically, they argued that she had been committed to their custody by the "lawful authority" of Officer Moore and then of the Sheriff, pursuant to the bench warrant. Relying on *Glover, supra*, 143 Md.App. 313, 794 A.2d 735, they further argued that, upon Dett's being committed to their custody by lawful authority, they could not take action to release her except upon court order, and they had no duty to investigate whether she in fact was not the subject of the bench warrant. They argued that, for the same reason, Dett's due process rights had not been violated, as a matter of law.

In her affidavit, Assistant Warden Murphy acknowledged that on the evening of March 7, at Central Booking, Dett's SID number was found not to match the SID number for the person who was the subject of the bench warrant. She further attested, however, that the detaining authorities could not release Dett until directed to do so by court order, and "could have simply held [her], without any investigation, and produced her in the Circuit Court when they were ordered to do so." She pointed out that, when the discrepancy in SID numbers was discovered, it was after business hours for the circuit court. She attested that DPDS could not release Dett until it "received a court order releasing her from custody," but Central Booking staff members nevertheless "immediately began to undertake steps to verify [Dett's] identity, including re-fingerprinting her, to satisfy themselves that [she] was not the person who was the subject of the bench warrant"; and that, once they were "satisfied that [Dett] was not the person who was the subject of the bench warrant ..., they were able to secure an order from the Circuit Court authorizing her release."[6]

Dett filed an opposition to the motion for summary judgment, supported by a memorandum of law, supporting docu-

---

**6.** Again, no such court order is in the record.

ments (including Murphy's affidavit), and her own affidavit. She argued that the appellees did not have legal authority to detain her on the bench warrant or "commitment order," as issued based on the bench warrant, because, among other reasons, neither her name nor her SID number matched those of the person who was the subject of the warrant.

In a reply memorandum, the appellees argued that DPDS officers could not release Dett without a court order authorizing them to do so, and, given that, it "acted reasonably once it had reason to suspect that [the appellant] was the wrong person who was in custody."

There was no request for a hearing.

On March 22, 2004, the court issued an order granting the motion for summary judgment and entering judgment in the appellees' favor. The order was docketed on March 24, 2004. On April 20, 2004, Dett noted this appeal.[7]

## STANDARD OF REVIEW

▮▮▮▮▮ In deciding a motion for summary judgment, the circuit court must determine two legal issues: 1) whether there is a genuine dispute of material fact and 2) if not, whether the moving party is entitled to summary judgment as a matter of law. Md. Rule 2–501; *Salamon v. Progressive Classic Ins. Co.*, 379 Md. 301, 307, 841 A.2d 858 (2004); *Jahnigen v. Smith*, 143 Md.App. 547, 554, 795 A.2d 234 (2002). In deciding the first issue, the court must resolve all disputes of material fact and the inferences that can be drawn from the evidence and pleadings, against the moving party. *Jones v. Mid–Atlantic Funding Co.*, 362 Md. 661, 676, 766 A.2d 617 (2001); *Carter v. Aramark Sports and Entertainment Services, Inc.*, 153 Md.App. 210, 224, 835 A.2d 262 (2003), *cert. denied*, 380 Md. 231, 844 A.2d 427 (2004). A material fact is

---

7. On April 12, 2004, Dett filed a motion to alter, amend, or revise the judgment, pursuant to Maryland Rules 2–534 and 2–535. The court denied the motion by written order on May 4, 2004. The order was entered on May 5, 2004.

one the resolution of which will alter the outcome of the case. *King v. Bankerd,* 303 Md. 98, 111, 492 A.2d 608 (1985); *Bagwell v. Peninsula Regional Medical Center,* 106 Md.App. 470, 489, 665 A.2d 297 (1995).

■ Because the decision to grant summary judgment is purely legal, we review it *de novo,* determining for ourselves whether the record on summary judgment presented a genuine dispute of material fact, and if not, whether the moving party was entitled to summary judgment as a matter of law. *O'Connor v. Baltimore Co.,* 382 Md. 102, 110, 854 A.2d 1191 (2004); *Hines v. French,* 157 Md.App. 536, 549–50, 852 A.2d 1047 (2004).

## DISCUSSION

### (a)

### *False Imprisonment*

■ Under Maryland common law, false arrest and false imprisonment are intentional torts. The essence of the civil wrong in each tort is an unlawful detention. The torts thus are separate causes of action that share the same elements. *Okwa v. Harper,* 360 Md. 161, 189–90, 757 A.2d 118 (2000). The elements are: "1) the deprivation of the liberty of another; 2) without [his] consent; and 3) without legal justification." *Heron v. Strader,* 361 Md. 258, 264, 761 A.2d 56 (2000); *Montgomery Ward v. Wilson,* 339 Md. 701, 721, 664 A.2d 916 (1995); *Great Atl. & Pac. Tea Co. v. Paul,* 256 Md. 643, 654, 261 A.2d 731 (1970); *Safeway Stores, Inc. v. Barrack,* 210 Md. 168, 173, 122 A.2d 457 (1956).

■ The vast majority of false arrest and imprisonment cases focus on the third, "legal justification," element of the torts. The interrelationship between false arrest and false imprisonment is such that the "legal justification" to detain element is the "equivalent to legal authority" under the law of arrest. *Ashton v. Brown,* 339 Md. 70, 120, 660 A.2d 447 (1995) (quoting *Great Atl. & Pac. Tea Co., supra,* 256 Md. at 655, 261 A.2d 731).

In the case at bar, Dett did not include a claim for false arrest in her complaint. She did not sue Officer Moore or the HABC Police Department for false arrest. She does not contend that Officer Moore acted without legal authority in arresting her upon being informed by the dispatch officer that there was a bench warrant for a person using the name Evelyn Dett. Rather, Dett's claim is for false imprisonment, against the appellees, for post-arrest detention.

The parties agree that there is no dispute of material fact as to the first two elements of the tort of false imprisonment: Dett was deprived of her liberty by the appellees for four days, from the evening of March 7 to the afternoon of March 10, and she did not consent to the deprivation. The third element of the tort of false imprisonment, "legal justification," is the topic of this appeal.

Dett contends that the evidence in the summary judgment record could support a finding that, soon after she was transferred into the custody of DPDS, first at Central Booking and then at the Detention Center, the DPDS authorities reasonably knew, from the discrepancy found during booking and upon further investigation between her SID number and that of the person for whom the bench warrant was issued, that she was not the person named in the bench warrant (and hence in the "commitment order"). At that point, because the bench warrant was the sole basis for her lawful detention, the appellees no longer had the legal authority to detain her, and further detention was without "legal justification."

The appellees respond that the evidence in the summary judgment record shows that, upon learning, on the evening of March 7, that Dett's SID number did not match the SID number of the subject of the bench warrant, they undertook an investigation to determine which person properly was the subject of the bench warrant; and by March 11 they were satisfied that Dett was not that person. At that point, they sought action by the circuit court and the Sheriff's Office to "undo" the bench warrant and commitment order, and upon obtaining permission, released Dett. They maintain, under

*Glover, supra,* that they were without legal authority to release Dett. Only the circuit court and the Sheriff's Office could release Dett; and therefore, even if they reasonably knew, as of the evening of March 7, that Dett was not the subject of the bench warrant, they were powerless to release her at least until Monday, March 11, because Dett was arrested after closing time for the circuit court.

An arrest warrant that is facially valid provides legal authority to arrest and detain the person who is the subject of the warrant. Ordinarily, a law enforcement officer who detains a person based on an arrest warrant that is valid on its face does so with legal authority, even though the warrant was improperly issued by the court. *Ashton v. Brown,* 339 Md. 70, 120, 660 A.2d 447 (citing *Brewer v. Mele,* 267 Md. 437, 440, 298 A.2d 156 (1972)). However, with respect to an arrest pursuant to a facially valid warrant (and also with respect to an arrest on probable cause that a felony has been committed by the arrestee), "legal justification to arrest may depend, in part, upon the arresting officer's good faith and reasonable belief in his authority to arrest." *Id.; see also State v. Hall,* 122 Md.App. 664, 669, 716 A.2d 335 (1998) (holding that whether the Department of Correction and the Warden of the Eastern Maryland Correctional Institution had legal justification to confine an inmate beyond the expiration of his sentence due to their miscalculation of the inmate's "good time" credits turned, in part, on their good faith and reasonable belief that they had the authority to detain him).

In *Green v. Brooks,* 125 Md.App. 349, 725 A.2d 596 (1999), and in *Glover, supra,* 143 Md.App. 313, 794 A.2d 735, this Court addressed arrests based on improperly issued warrants. In *Green,* we affirmed the grant of summary judgment in favor of a police officer on a false imprisonment claim by the plaintiff, whom the officer had arrested on a bench warrant the court had improperly issued. The plaintiff's cousin had committed the crime in question (shoplifting) but had misidentified himself to the police as the plaintiff. That deceit led to the court's issuing a bench warrant for the plaintiff for failure

to appear for trial. Even though the bench warrant was improperly issued, for the wrong person, it was facially valid, conferring legal authority for the officer to arrest the plaintiff, who was its subject. There was no evidence whatsoever that the arresting officer knew that the warrant had been issued for the wrong person. As a matter of law, therefore, the officer's arrest of the plaintiff was legally justified, and he could not be liable for false imprisonment.

In *Glover*, on which the appellees rely, the plaintiff, James Glover, sued DPDS and others for negligence. The plaintiff had been serving time in the Detention Center and was due to be released. His SID number was 991140962. A judge in the circuit court issued a bench warrant for failure to appear for trial on an "Unauthorized Use Theft" charge. 143 Md.App. at 315–16, 794 A.2d 735. The bench warrant identified its subject as James Glover, SID number 991140962. Based on the bench warrant, the Sheriff's Office issued a detainer, directing DPDS to hold the plaintiff. The plaintiff protested to DPDS employees that the bench warrant should not have been issued for him, because he was not the James Glover who had failed to appear for trial. Ultimately, the circuit court determined that it had issued the bench warrant for the wrong James Glover—the James Glover that was supposed to have been the subject of the bench warrant had a different SID number.

In claiming negligence, the plaintiff asserted that DPDS had breached a general duty to investigate whether the bench warrant had been issued improperly, for the wrong person. The circuit court granted summary judgment, finding an absence of such a general duty. This Court affirmed, holding that, when DPDS detains a person based on a facially valid warrant and related detainer for that person, and therefore on lawful authority, it does not have a general duty to investigate whether the facially valid warrant was improperly issued, for the wrong person. In so holding, we explained that, when a person is held on lawful authority, such as on a facially valid warrant naming the person, DPDS has a statutorily imposed duty to safely detain the person until he is discharged by due course of law, *i.e.*, according to a court directive. Until that

happens, DPDS is not authorized to release the person. Only the court has the authority to determine that it had issued the warrant improperly.

The case at bar differs from *Green* and *Glover* in that it does not concern an improperly *issued* warrant. In *Green* and *Glover*, the arresting officers arrested the person the warrant directed them to arrest. The problem in both cases, as ultimately revealed, was that the court had improperly issued a facially valid warrant for the wrong person. In this case, by contrast, a facially valid bench warrant properly was issued for Vanessa Hawkins, a/k/a Evelyn Dett, but was improperly *executed* on Dett, who was not its subject.

In *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), the Supreme Court addressed the validity of an arrest, based on probable cause, of a person (Miller) who was mistaken for another person (Hill). The police received information that Hill had committed a robbery. They went to Hill's apartment and were met by a man who matched Hill's description, but said his name was Miller. Thinking that Miller was Hill, the police arrested him, and conducted a search of the premises incident to the arrest, in which they recovered weapons and stolen goods connected to the robbery. In fact, the man they arrested was Miller, not Hill. In his subsequent prosecution for robbery, Hill sought to suppress the weapons and stolen property on the ground that the search of his apartment had not been pursuant to a valid arrest of Miller.

The Supreme Court held that, when the police have probable cause to arrest one person but reasonably mistake a second person for him, the arrest of the second person is valid. The Court explained that a subjective good faith belief that the person being arrested is the person who committed the crime does not alone justify the arrest, but a reasonable and good faith belief that the person being arrested is the person who committed the crime does justify the arrest. 401 U.S. at 802, 91 S.Ct. 1106.

The holding in *Hill* has been applied to determine the validity of an arrest of one person under a properly issued and valid arrest warrant for another person. In *Sanders v. U.S.*, 339 A.2d 373 (D.C.1975), there was an outstanding arrest warrant for a man named Saunders. The police encountered Sanders, who gave them an identification card that misspelled his name as Saunders. Sanders matched the description of the subject of the warrant and in answer to questions gave the police information connecting him to the jurisdiction where the warrant was issued. The police arrested Sanders pursuant to the warrant and in a search incident to the arrest recovered illegal weapons. In fact, the warrant was for Saunders, another person. In a prosecution against him for illegal weapons possession, Sanders sought, unsuccessfully, to suppress the weapons as having been obtained in a search incident to an invalid arrest.

On appeal after conviction, the District of Columbia Court of Appeals, applying *Hill*, held that a mistaken arrest of a person who is not the subject of the arrest warrant pursuant to which he was arrested is valid when the arresting officers reasonably believe in good faith that the person arrested is the subject of the warrant. The Court explained:

> Should doubt as to the correct identity of the subject of the warrant arise, the arresting officer obviously should make immediate reasonable efforts to confirm or deny the applicability of the warrant to the detained individual. If, after such reasonable efforts, the officer reasonably and in good faith believes that the suspect is the one against whom the warrant is outstanding, a [search] pursuant to the arrest of that person in not in contravention of the Fourth Amendment.

339 A.2d at 379.[8] *See also Gero v. Henault*, 740 F.2d 78, 84–85 (1st Cir.1984) (holding that, when there is a facially valid

---

**8.** In *Sanders*, the court distinguished the precedent established in *Hill* from that established in *Whiteley v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), decided one week before *Hill*, in which the Supreme Court held that a constitutionally valid warrant is a

arrest warrant, the question of whether the officers have legal justification for the arrest turns on whether it was reasonable for the arresting officers to believe that the person arrested was the one sought in the warrant); *State v. Navanick*, 987 P.2d 1276, 1278 (Utah App.1999) (recognizing that, when the defendant was mistakenly arrested pursuant to a valid arrest warrant for someone else, whether legal justification for the arrest existed turned on whether the arresting officers acted reasonably under the circumstances); *State v. Green*, 318 N.J.Super. 346, 723 A.2d 1012, 1013 (1999) (holding that a police officer had a reasonable belief that he was arresting the person who was the subject of an arrest warrant when he mistakenly arrested another man whose appearance was "dramatically similar" to that of the warrant's subject and who was present at the address listed on the warrant for its subject).

■ The principle derived from *Hill*, that an arrest of the wrong person based on a facially valid warrant is lawful if the arresting officer reasonably and in good faith believed that he was arresting the person named in the warrant, is the same principle stated by the Court of Appeals, in *Ashton*, in discussing the legal justification element of a false imprisonment claim based on an arrest or detention pursuant to a warrant (or probable cause that the arrestee has committed a felony). Legal justification "may depend, in part, upon the arresting officer's good faith and reasonable belief in his authority to arrest." *Ashton, supra*, 339 Md. at 120, 660 A.2d 447; *see also, e.g., Robinson v. City and County of San Francisco*, 41 Cal.App.3d 334, 336–37, 116 Cal.Rptr. 125 (1974) (holding that, whether an officer had legal justification to arrest a person whose stage name was "Smokey Robinson" on a warrant issued for "Harold Cunningham also known as 'Smokey Robinson,'" when the arrestee denied being "Harold Cunningham" and offered to show the officers identification to that effect, was a question of whether the officer acted with the *reason-*

---

prerequisite to a valid arrest pursuant to the warrant. *Cf. Ott v. State*, 325 Md. 206, 600 A.2d 111 (1992)(holding that arrest pursuant to a warrant that was invalid because it already had been executed was illegal).

*able belief* that he was arresting the person named in the warrant).

In the case at bar, which concerns the improper execution of a warrant against a person whom the warrant was not intended to detain, the "lawful authority" of the DPDS officers in continuing to detain Dett on the bench warrant depended, in part, on whether they continued to have a good faith reasonable belief that she was the person the warrant was directing them to detain. The bench warrant was the sole authority on which Dett was arrested and detained; there was no probable cause on anyone's part to believe she had committed a felony [9] Thus, if there is a genuine dispute of material fact about whether, during that detention, the officers no longer were holding Dett on the good faith reasonable belief that she was the person against whom the bench warrant was issued, the issue of legal justification to detain is a jury question, precluding summary judgment.

The appellees' reliance on *Glover* for the proposition that, even if the DPDS officers no longer had a good faith reasonable belief that Dett was the person named in the warrant, they were powerless to release her, is misplaced. Again, the situation Dett alleges existed—that she was being detained on a facially valid warrant by officers who did not reasonably believe that she was the person named in the warrant—differs significantly from the situation in *Glover*, in which the plaintiff was detained on a facially valid warrant for him that was improperly issued by the court.

 Only the issuing court can determine that its warrant was issued improperly and vacate it, to correct the mistake. By contrast, a problem of improper execution of a warrant does not require court intervention to vacate the warrant. The warrant remains valid and properly issued.

---

9. Officer Moore arrested Dett pursuant to the warrant, upon information that the person named in the warrant was using the alias Evelyn Dett. Although Dett protested that the warrant did not apply to her, she concedes that, under the circumstances, Officer Moore arrested her upon the reasonable belief that she was the subject of the warrant.

The problem is remedied by releasing the person the detaining officers no longer reasonably believe is the warrant's subject, and who they therefore no longer are holding by lawful authority.

■ Contrary to the appellees' argument, if the DPDS officers no longer were holding Dett by lawful authority, they were not powerless to release her; indeed, they were obligated to release her. Also, the officers were obligated to use reasonable diligence to determine that Dett in fact was the subject of the warrant. *See Sanders, supra,* 339 A.2d at 379; *see also, e.g., Hayes v. Kelly,* 625 So.2d 628, 630, 633 (La.App. 3 Cir.1993) (upholding a judgment of liability for false imprisonment against a sheriff when a contempt warrant was issued for "Bubba Hayes"; officers arrested a person named "Allen Hayes" known to have the nickname of "Booby"; the arrestee protested the arrest; but the Sheriff did not conduct a further investigation into the identity of the arrestee); *Robinson v. City of Winston–Salem,* 34 N.C.App. 401, 407–08, 238 S.E.2d 628 (1977) (whether officers were liable for false imprisonment in the arrest of "Clarence Bernard Robinson" when they arrested him pursuant to a warrant for "Bernard Jackson" turned in part on whether they used reasonable diligence in determining whether the party arrested was actually the person named in the warrant).

■ Generally, issues of good faith and reasonable belief are factual questions not suitable for resolution on summary judgment. *See Jupiter v. State,* 328 Md. 635, 645, 616 A.2d 412 (1992) (good faith a question for the fact-finder to resolve); *Richmond v. State,* 330 Md. 223, 252 n. 7, 623 A.2d 630 (1993) (reasonable belief a question for the fact-finder to resolve). *See also Rite Aid Corp. v. Hagley,* 374 Md. 665, 684, 824 A.2d 107 (2003) (summary judgment usually is not proper for claims of abuse of process, defamation, false imprisonment, or malicious prosecution); *Carter, supra,* 153 Md.App. at 225, 835 A.2d 262.

The summary judgment record in this case plainly presents a genuine dispute of material fact as to whether, beginning at

some point during Dett's four-day detention, the appellees no longer were holding her on the reasonable and good faith belief that she was the subject of the bench warrant, and hence on the related "commitment order." Accordingly, the false imprisonment element of legal justification could not be decided as matter of law, and summary judgment should not have been granted on that ground.[10]

### (b)

### *Constitutional Tort—Violation of Due Process*

The appellees' motion for summary judgment on Dett's state constitutional tort claim was made on precisely the same ground as its motion for summary judgment on the false imprisonment claim. Accordingly, summary judgment should not have been granted on that claim, on that basis, either.

**JUDGMENT REVERSED. CASE REMANDED TO THE CIRCUIT COURT FOR BALTIMORE CITY FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY THE APPELLEES.**

---

10. There was no hearing on the motion for summary judgment and, in its written order, the circuit court did not articulate the ground on which summary judgment was granted. The appellees' motion was premised solely on the issue of legal justification to detain, however, so we must assume that was the sole basis for the grant of summary judgment. *See McGraw v. Loyola Ford, Inc.,* 124 Md.App. 560, 585, 723 A.2d 502 (1999).