STATE OF TENNESSEE ex rel. CARL ANDERSON,
Appellee, v. H. Q. EVATT et al., Appellants.
—471 S.W.2d 949

Eastern Section. June 16, 1971.

Certiorari Denied by Supreme Court October 18, 1971.

Walter L. Lusk, Chattanooga, for appellants.

Marvin B. Berke, Chattanooga, for appellee.

PARROTT, J.  This circuit court action for damages grows out of an officer's arresting the wrong person whose name was the same or similar as the person named in the warrant. Carl E. Anderson brought the suit against H. Q. Evatt, sheriff of Hamilton County, his bonding company, Maryland Casualty Company of Baltimore, Maryland, and Ervin Partridge, one of the sheriff's deputies making the arrest, seeking compensatory and punitive damages for false arrest and imprisonment.

The trial below resulted in a jury verdict in favor of plaintiff for $4500.00 compensatory damages. On the punitive damage count the jury found in favor of all de-

fendants and against plaintiff. Defendants have appealed from the judgment entered in accord with the verdict insisting the court erred in not sustaining their motion for directed verdict.

Appellants argue that an officer making an arrest under a valid warrant cannot be liable for false arrest and imprisonment in the absence of a showing of personal spite or the wanton disregard of the rights of others on the part of the arresting officers. Johnson v. Reddy, Ohio App., 120 N.E.2d 459; Sanders v. Jacobs, 119 Ga.App. 101, 166 S.E.2d 433; Johnson v. Enlow, 132 Colo. 101, 286 P.2d 630.

While there is authority in other states to support appellants' insistence, we think the better principles and greater weight of authority is, as the trial court charged the jury, that an officer must act prudently, reasonably and use ordinary care in making arrests, including the ascertainment that the right person is being arrested. See McQueen v. Heck, 41 Tenn. 213; Smith v. State, 26 Tenn. 43; Travis v. Bacherig, 7 Tenn.App. 638; (Blue) Star Service v. McCurdy, 36 Tenn.App. 1, 251 S.W.2d 139; 32 Am.Jur., 2d, False Imprisonment, Sec. 71; 35 C.J.S. False Imprisonment sec. 29(b); 127 A.L.R. 1050; 10 A.L.R. 2d 750.

Having declared an officer making an arrest is under a duty to exercise ordinary care and use reasonable diligence, before reviewing the facts, let us bear in mind when this Court reviews a judgment based on a jury verdict, we do not weigh the evidence or decide where the preponderance lies but merely determine whether there is material evidence to support the verdict. City

of Chattanooga v. Rogers, 201 Tenn. 403, 299 S.W.2d 660; Dorrity v. Mann, 43 Tenn.App. 554, 310 S.W.2d 191.

▮ In determining if there is material evidence to support the verdict, we are required to take the strongest legitimate view of all the evidence in favor of the verdict, to assume the truth of all that tends to support it, to discard all to the contrary, and to allow all reasonable inferences to sustain the verdict. D. M. Rose & Co. v. Snyder, 185 Tenn. 499, 206 S.W.2d 897. If there is any material evidence to support the verdict, it must be affirmed. City of Chattanooga v. Ballew, 49 Tenn.App. 310, 354 S.W.2d 806, and numerous cases there cited.

▮ The Hamilton County sheriff's office received from Walker County, Georgia, a warrant charging Carl Eugene Anderson with abandonment of his three minor children, ages 3, 6 and 5. Upon receipt of the Georgia warrant, a deputy of the Hamilton County sheriff's office obtained from the General Sessions Court of Hamilton County a Tennessee state fugitive warrant charging the same offense and that the person named in the warrant is a "fugitive from justice." The Tennessee warrant did not contain the full name "Carl Eugene Anderson" but charged the offense against "Carl E. Anderson." On the Tennessee warrant, in the space designated for defendant's address, was placed "175 Local Chatt." Similar language was listed on the Georgia warrant as being the address of the person named in the warrant.

When the Tennessee warrant reached the sheriff's office, Deputy Thurman Stamps, seeing that the warrant was for Carl E. Anderson, whom he thought he knew as being a former inmate of the Hamilton County jail, went

to the jail records where he found cards bearing the name Carl E. Anderson and Carl E. Anderson, Jr. From these cards he copied the address "3823 Oweda Terrace" on a card which he attached to the outside of the warrant. The jail cards contained other information such as age, color of hair, eyes, etc. but Deputy Stamps did not put such information on the card.

After looking at the cards, he then checked the phone book, for as he said, to be sure of the address. The warrant with the address card was placed in a box at the sheriff's office where same was picked up by defendant, Deputy Sheriff Ervin Partridge, and his partner, L. F. Satterfield. The two deputies proceeded to the Oweda Street address, arriving there at approximately 8:00 a.m. where they saw a man dressed in his undershorts walking in the yard. Upon inquiry the man in the yard identified himself as Carl E. Anderson. Deputies Partridge and Satterfield then notified him they had a warrant charging him with abandonment in Walker County, Georgia. Plaintiff immediately told the officers he was not the Carl E. Anderson named in the warrant. After some discussion and plaintiff's showing Deputy Satterfield his garden in an effort to prove he had not been in Georgia, the officers permitted plaintiff to go to his bedroom through an outside entrance to obtain clothing. While in the bedroom Anderson's wife came in and was advised by Mr. Anderson that he was being taken to jail. Mrs. Anderson testified she did not try to persuade the officers to not take her husband because her husband told her it was no use to say anymore to the officers. However, at the suggestion of her husband she did call their attorney, James Anderson.

After leaving the Anderson residence and upon further insistence by plaintiff that he was not the man named in the warrant, the deputies called for advice and instruction their immediate superior, Captain Bufford Duggan, who met them at the rear of the Redbank Police Station. There is some dispute as to what actually occurred at the Redbank Police Station. Plaintiff testified that he was left locked in the car and the two deputies met the captain several feet away from the car. All the officers testified that Captain Duggan opened the front door of the police car and conferred through the wire cage with Anderson. Captain Duggan testified that plaintiff was so hysterical he could not communicate with him and advised the deputy to take him on to the jail.

Plaintiff testified that while at the Redbank Police Station he noticed Mr. Bishop, Redbank's City Manager, going into the building. After seeing Mr. Bishop, plaintiff says he tried without success to get the officers to talk to Mr. Bishop who could identify plaintiff.

Shortly after leaving the Redbank Police Station, plaintiff proclaimed he was ill and told the officers he thought he was having a heart attack. The deputies again contacted Captain Duggan for instructions and were advised to get plaintiff to the nearest hospital. After conferring with Captain Duggan the second time, the deputies turned on their flasher light and proceeded under emergency conditions to Currey's Clinic Hospital where plaintiff was taken to the emergency room and later admitted to the hospital. While at the Clinic the officers were told by Dr. Currey, who knew plaintiff, that in his opinion they had the wrong man. By this time plaintiff's son, Carl E. Anderson, Jr., had arrived at the hospital

and accompanied the two deputies to the jail where apparently it was finally learned the wrong person had been arrested.

From the above facts we believe there is ample material credible evidence from which the jury could find the officers making this arrest did not act prudently or exercise ordinary care nor under the circumstances did they use reasonable diligence to ascertain the right person was being arrested. Moreover, we think from the evidence the jury was warranted in concluding these officers were guilty of gross negligence in failing to make an additional investigation or inquiry as to the true identity of plaintiff before placing him under arrest.

We recognize that it is not uncommon for a person being placed under arrest to insist to the officer that he is not guilty or proclaim the wrong person is being arrested. Nevertheless, in this case to us there appears several things which, if the officers had been acting prudently, would have alerted them to make at least an additional inquiry as to the identity of plaintiff.

First, the Tennessee warrant itself contained two addresses. Second, the sheriff's office, when swearing out the Tennessee warrant, permitted the initial "E" to replace the name "Eugene" that was on the Georgia warrant. Here, being arrested for abandonment of minor children, is a 65 year old man with a woman present identifying herself as his wife. The ages and surrounding circumstances are not the usual found where one is charged with abandonment of three to six year old children. From the moment the officers advised plaintiff of the warrant, he insisted he was not the right man and

told the officers he never lived in Georgia but he had lived in this same residence for more than 30 years. The assertions of the plaintiff, considered along with the circumstances and conditions at the Anderson household, appear to be more than sufficient notice to at least arouse a suspicion the wrong person was being arrested. Surely if these officers had used reasonable diligence and made any additional injuiry or investigation to ascertain if the right person was being arrested, such would have disclosed the mistake.

For the foregoing reasons, let the judgment be affirmed with costs taxed to the appellants.

Cooper, P.J.(E.S.), and Sanders, J., concur.