891 A.2d 1113

**STATE of Maryland, et al.**

v.

**Evelyn DETT.**

**No. 25, Sept. Term, 2005.**

Court of Appeals of Maryland.

Feb. 7, 2006.

Glenn T. Marrow, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General of Maryland, on brief), of Baltimore, for petitioners.

Randall J. Craig, Jr. (Craig & Henderson, L.L.C., on brief), of Baltimore, for respondent.

Argued before BELL, C.J., RAKER, WILNER, CATHELL, HARRELL, BATTAGLIA, and GREENE, JJ.

WILNER, J.

The issue before us is whether, in an action under the Maryland Tort Claims Act (Md.Code, §§ 12–101 through 12–110 of the State Government Article), the State may be found liable for false imprisonment, negligence, or violation of the plaintiff's rights under Article 24 of the Maryland Declaration of Rights when (1) the plaintiff is arrested and brought to a State detention facility by a police officer in the mistaken belief that the plaintiff is the person against whom an arrest warrant has been issued, (2) the detention facility learns through its own investigation that the plaintiff is probably not the person named in the warrant or in an implementing commitment order issued by the local sheriff and there is no other legal basis for holding the plaintiff, and (3) the detention facility nonetheless continues to detain the plaintiff for a

significant period of time. We shall answer that question in the affirmative.

## BACKGROUND

At approximately 5:00 in the afternoon of Friday, March 7, 2003, respondent, Evelyn Yulonda Dett, was stopped for a traffic violation by Baltimore City Housing Authority police officer Darven Moore. A presumably routine background check by Officer Moore revealed the existence of an outstanding warrant for the arrest of Vanessa Hawkins "AKA Evelyn Dett." The warrant was issued by the Circuit Court for Baltimore City on July 31, 2002, for violation of probation (VOP). Although Ms. Dett protested that she was not Vanessa Hawkins, it is not clear, as there is no statement from Officer Moore in the record, if the officer made any further investigation to determine whether Ms. Dett was, in fact, the person named in the warrant.

The warrant, No. 802134014, identified Ms. Hawkins as a black female born July 11, 1963, with a "SID" number of 381961. A SID (State Identification) number is a unique number directly linked to an individual's fingerprints. Because of that link, no two persons should have the same SID number; nor, if the proper procedures are followed, should a person ever have more than one SID number.[1] The warrant directed any law enforcement officer to apprehend Ms. Hawkins and commit her to the Baltimore City Jail—now known as the Baltimore City Detention Center—pending a hearing on the VOP charge, permitted her to post bail in the amount of $10,000, identified Tobi Thomas as the responsible Division of Parole and Probation agent, and gave a telephone number and address where that agent could be reached. How much of that information was known by Officer Moore is not clear.

---

1. Counsel for the State has suggested the possibility that, if a person has a SID number based on an earlier fingerprinting and a subsequent fingerprinting is not done correctly, a different SID number might result because the two prints would not match.

Obviously in the belief that the person stopped was, in fact, the person named in the warrant, Officer Moore delivered Ms. Dett to the Baltimore City Central Booking and Intake Center (CBIC) at 5:50 p.m. CBIC is a facility operated by the Division of Pretrial Detention and Services of the Maryland Department of Public Safety and Correctional Services (DPSCS). Within the next hour, Ms. Dett was "booked," photographed, and fingerprinted. By 6:35 p.m., CBIC had received, or become aware of, a commitment order issued by the Baltimore City Sheriff to the Warden of the Baltimore City Detention Center, directing the warden to receive into his custody the body of Vanessa Hawkins, identified as a black female born July 11, 1963, with a SID number 381961, "committed to await further action of the Circuit Court for Baltimore City." Pursuant to that order, entries were made in the CBIC log, "DO NOT RLSE SUBJECT BOOKED ON CIRCUIT CT # 802134014." Presumably in conformance with the commitment order, all of the CBIC records identify Ms. Dett as Vanessa Hawkins. The inmate file created by CBIC is in the name of Vanessa Hawkins.

At 6:44 p.m., Ms. Dett's fingerprints were sent to the Central Records unit which, within about a half hour, responded with a SID number of 2413966. That number, of course, was different from the SID number on both the warrant and the commitment order. The response, along with an "ID Completed Flag," was placed into the Vanessa Hawkins inmate record at 7:22 p.m. Ten minutes later, Ms. Dett was placed in a group cell at CBIC, where she remained until early the next morning, when she was transferred to the Detention Center.[2] At some point during the evening, the discrepancy in SID numbers was noted. Debora Driver, the Director of Central Records for CBIC, sent a "SID Problem Form" to the shift commander. The form stated as its subject, "SID PROBLEMS," noted the two SID numbers, and explained that

---

**2.** There is some ambiguity as to whether she was transferred at 1:31 a.m., as the Court of Special Appeals supposed, or not until 6:23 a.m., which the actual record seems to indicate. The possible discrepancy is not important to this appeal.

"defendant has 2 SID # s—Commitment has been entered into the system under 2413966. I contacted fingerprint who insisted that this is the correct # . I spoke to Ada who said that they could not do anything until Monday 3/10/03." Copies of that form were placed in both the inmate file and a "Sid Problem binder." At or about the same time, Ms. Driver prepared and filed a "Problem Paperwork Notice," again noting that "defendant has 2 SID # s," *that the problem would keep her from being released,* and asking "Please clarify with fingerprint the correct # to be used."

The record does not indicate who "Ada" was, but, in its brief in this Court, the State acknowledges that the person or persons contacted by Ms. Driver were "fingerprint technicians at the Criminal Justice Information System" (CJIS), also a unit and operation of DPSCS. They were, in other words, CJIS, and State, employees.

Prior to Ms. Dett's transfer to the Detention Center, CBIC became aware of other discrepancies, beyond the two SID numbers. An Offender Booking Information Report in the CBIC file shows a birth date of February 6, 1962, for the Vanessa Hawkins supposedly being held by CBIC—which, in fact, was Ms. Dett's actual birth date—whereas both the VOP warrant and the sheriff's commitment order show a birth date of July 11, 1963 for the Vanessa Hawkins who was the subject of the warrant and commitment order. At 6:19 a.m. on March 8, CBIC sent an inquiry to CJIS to identify the person with SID number 2413966, and the response came back "No exact matched record on file." CBIC immediately sent another request to CJIS to identify the person with SID number 381961.

At some point not later than 11:22 a.m., CJIS reported that SID number 381961 was that of Vanessa Ann Hawkins, alias Evelyn Y. Dett. The response also showed two Social Security numbers, neither of which matched that of Ms. Dett, and two dates of birth, one matching the date on the commitment order for Vanessa Hawkins and one being that of Ms. Dett. The response revealed as well an FBI number, fingerprint

information, eight prior contacts that Vanessa Hawkins had with CBIC, and a height and weight for Vanessa Hawkins that were slightly, but not significantly, different from those of Ms. Dett. The prior CBIC contacts that were listed included the date and CBIC case number for each contact.

Despite these unexplained inconsistencies—the different SID numbers, the non-matching Social Security numbers, the different dates of birth, the discrepancy in height (two inches)—and the additional information that could have led to some clarification (the probation officer's number, the FBI number, the prior CBIC contact information) no further effort was made over the weekend to investigate whether the person being held, Ms. Dett, was, in fact, the Vanessa Hawkins who was the subject of the warrant and commitment order. At some point on Monday, March 10, CBIC received a response from a Tracey Powell to the Problem Paperwork Notice sent by Ms. Driver on March 7. Ms. Powell stated that "these are two different people. Correct SID # 2413966 for Vanessa Hawkins DOB 2–6–1962. SID # 381961 belongs to Evelyn Dett who used Vanessa Hawkins as AKA. DOB 7–11–63." CBIC responded:

> "[Y]ou still did not tell us which SID is correct for Vanessa Hawkins born 2–10–62 # 2413966 is that the correct SID # also the DOB on the release is for the inmate w/DOB of 7–11–63, but uses the DOB of 2–6–62. We need to have the lady fingerprinted again since the release had the DOB different from what is on the offender booking sheet."

The record does not reveal any response to that communication. Nothing more was done on March 10 to resolve the issue. CBIC had a photograph of Ms. Dett, which presumably was taken when she was booked on March 7. At some undefined point, either CBIC or the Detention Center received a copy of a photograph of the Vanessa Hawkins who was the subject of the warrant and commitment order and had the SID number 381961. The women depicted in the two photographs are somewhat similar but by no means identical in appearance.

At 10:27 a.m. on March 11, 2003, the Central Records Office of the DPSCS Division of Pretrial Detention and Services, which operates both CBIC and the Detention Center, sent a request to "Bonnie" in the Circuit Court for a "court seal + true test" for Vanessa Hawkins, SID 992413966. Within an hour, the sheriff sent to the Warden of the Detention Center an order to release "Vanessa Hawkins" with SID number 2413966, noting "WRONG DEFENDANT." The record does not reveal the basis on which the sheriff reached that conclusion. Upon receipt of that directive, the Detention Center promptly commenced the process for releasing Ms. Dett. She was, in fact, released at 1:00 p.m. She had remained in detention for three full days and the better part of a fourth.

In April, 2003, Ms. Dett filed a claim with the State Treasurer under the Maryland Tort Claims Act. When that claim was rejected, in October, 2003, she filed this action in the Circuit Court for Baltimore City against the State, DPSCS, the DPSCS Division of Pretrial Detention and Services, CBIC, the Detention Center, and the DPSCS Division of Parole and Probation for false imprisonment, violation of her rights under Article 24 of the Declaration of Rights, and for failing to follow the proper processing procedures.

No answer was ever filed to the complaint or amended complaint. Rather, the State, for itself and the various State units, responded with a motion for summary judgment, asserting that they had legal justification to detain Dett by virtue of her arrest and the commitment order from the sheriff. They argued that, notwithstanding Ms. Dett's protest that she was not the Vanessa Hawkins who was the subject of the VOP warrant and commitment order, the defendants had no obligation to conduct any investigation to determine whether they were holding the right person, but that, in any event, they did conduct some kind of investigation and released her upon order of the sheriff to do so.

The motion was supported by an affidavit of Susan Murphy, an Assistant Warden of CBIC, to which various CBIC records pertaining to Ms. Dett's detention were attached as exhibits.

Ms. Murphy contended that, because the Circuit Court offices were closed by the time Ms. Dett arrived at CBIC on Friday afternoon (March 7), she "could not be released until [CBIC] received a court order releasing her from custody" and that once the CBIC staff were "satisfied that Plaintiff was not the person who was the subject of the bench warrant issued by the Circuit Court for Baltimore City, they were able to secure an order from the Circuit Court authorizing her release." She did not explain, nor do the documents attached to her "Declaration" explain, what CBIC or the Detention Center did "to secure an order from the Circuit Court authorizing her release." Although she stated that, upon learning of the two SID numbers, Ms. Dett was re-fingerprinted, she did not state when that occurred, and there were no documents attached to her statement showing that a re-fingerprinting had occurred.

Ms. Dett responded that, upon her protest that she was not Vanessa Hawkins, she was advised that she would be released if her SID number did not match the one listed on the bench warrant, but that, instead of being released when it became clear that the SID numbers did not match, she was sent to the Detention Center and kept there until the afternoon of March 11. She argued that the defendants did not have the right to detain her, because she was not the person who was the subject of the warrant or the commitment order. The court was not impressed. Without a hearing and without any discovery having been taken, it granted the motion, entered summary judgment for the defendants, and subsequently denied a motion to alter or amend the judgment.

The Court of Special Appeals reversed. It concluded that the legal authority for the defendants to hold Dett pursuant to the warrant and commitment order depended on whether they had, and retained, a good faith reasonable belief that she was, in fact, the person whom the warrant directed them to detain. If, at any time, they ceased to have that reasonable belief, the court continued, they had a duty at that point to release her. On the record before it, the court found that there was a genuine dispute of material fact as to whether, at some point during the nearly four days of detention, the defendants no

longer entertained a reasonable belief that Ms. Dett was the Vanessa Hawkins who was the subject of the warrant and commitment order and that, as a result, summary judgment was inappropriate. The court struck the judgment and remanded the case for further proceedings. *Dett v. State*, 161 Md.App. 429, 869 A.2d 420 (2005).

We granted *certiorari* to determine whether the Court of Special Appeals erred in holding (1) that there was a genuine dispute of fact as to whether the defendants lost legal justification to continue their detention of Ms. Dett, and (2) that they had an obligation to investigate whether Ms. Dett was, in fact, the person who was the subject of the warrant. We shall affirm the judgment of the intermediate appellate court.

## DISCUSSION

The State acknowledges that Ms. Dett's actions are contingent, ultimately, on whether she was detained for any appreciable time without legal justification. Its position is that, where the detention is based on the execution of a facially valid arrest warrant, legal justification exists, even if the warrant is later determined to be invalid or the detainee is later determined to be innocent or not the person named in the warrant. When proceeding on the basis of a facially valid warrant, according to the State, there is no duty on the part of the detaining entity to investigate the nature or validity of the warrant. Contrariwise, the State argues that it had a mandatory legal duty to hold Ms. Dett until ordered otherwise by the court. At the very least, it posits, it had a duty to hold her until it was sure of her identity and that it acted reasonably in securing her release once it concluded she was not the person named in the warrant or commitment order.

■ Three claims were asserted in the amended complaint—false imprisonment, violation of rights guaranteed by Article 24 of the Declaration of Rights, and an action captioned as being filed under the State Tort Claims Act. The Tort Claims Act does not create any independent substantive causes of action but rather, subject to the conditions and limitations stated therein, merely substitutes liability on the

part of the State for liability that otherwise would exist on the part of covered State employees and officials. Little attention was given to that claim in either of the lower courts or, indeed, in the State's brief in this Court. At best, the averments in the count so captioned suggest a claim of negligence, which presupposes a duty, and, under the circumstances in this case, it can easily be dealt with in the context of the false imprisonment claim.

That is true as well with the claim under Article 24, which, like the false imprisonment claim, is also premised on a deprivation of liberty without legal justification. The State notes the existence of the Constitutional claim but presents its defense that there *was* legal justification for Ms. Dett's detention in the context of the false imprisonment claim and makes no separate, independent argument with respect to the Constitutional provision.[3] The Court of Special Appeals essentially treated the two claims together, as so shall we.

■ False imprisonment is a common law tort. We have defined it as the "deprivation of the liberty of another without his consent and without legal justification." *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 654, 261 A.2d 731, 738 (1970); *Heron v. Strader*, 361 Md. 258, 264, 761 A.2d 56, 59 (2000); *Manikhi v. Mass Transit*, 360 Md. 333, 365, 758 A.2d 95, 112 (2000). There is no dispute here that Ms. Dett was deprived of her liberty for nearly four days and that the deprivation, from its inception, was without her consent. The only issue, therefore, as to all three claims, is whether the deprivation, or any substantial part of it, was without legal justification. In

---

**3.** Article 24 of the Declaration of Rights is the State analogue to the due process clauses of the Fifth and Fourteenth Amendments. *Baltimore Belt Railroad Co. v. Baltzell*, 75 Md. 94, 99, 23 A. 74 (1891); *Solvuca v. Ryan & Reilly Co.*, 131 Md. 265, 270, 101 A. 710, 712 (1917); *Matter of Easton*, 214 Md. 176, 187, 133 A.2d 441 (1957). It provides, in relevant part, that no person shall "be taken or imprisoned or disseized of his ... liberties or privileges ... or deprived of his life, liberty or property but by the judgment of his peers, or by the law of the land." Implicit in that provision, of course, is that, if there is legal justification for the deprivation of one's liberty, there is no violation of Article 24, as the deprivation would be in conformance with the law of the land.

that regard, we are mindful that the case was resolved in the trial court on summary judgment, which is appropriate only if, after viewing all of the evidence properly before the court in a light most favorable to Ms. Dett, it is clear that there is no genuine dispute of any material fact and that the defendants were entitled to judgment as a matter of law. *de la Puente v. Frederick County,* 386 Md. 505, 510, 873 A.2d 366, 369 (2005); Maryland Rule 2–501(f).

As noted, both CBIC and the Detention Center are units within the DPSCS Division of Pretrial Detention and Services. Maryland Code, § 5–201 of the Correctional Services Article (CS), which creates those units, specifies that the Division has "the same authority with regard to the custody of its inmates and the operation of the Baltimore City Detention Center as ... the sheriffs have under this Code with regard to the detention of inmates committed to their custody and the operation of local correctional facilities." One of the specific duties assigned to the Commissioner of Pretrial Detention and Services—the head of the Division—is to "keep safely any inmate committed or transferred to the custody of the Commissioner until the inmate is discharged in accordance with law," CS § 5–202(c)(2), which is equivalent to the statutory duty of managing officials of local correctional facilities in that regard, *see* CS § 11–103(a), and to the common law duty of sheriffs, when acting as jailors. *See Harford County v. University,* 318 Md. 525, 569 A.2d 649 (1990).

The State cites CS § 5–202 in support of its position that it had not just the legal justification, but the legal mandate, to hold Ms. Dett until ordered by the court—the issuer of the warrant pursuant to which she was being held—to release her. It relies as well on *Glover v. State,* 143 Md.App. 313, 794 A.2d 735 (2002) for that proposition. Neither the statute nor *Glover* provide that support.

■ This Court has adhered to the view, first expressed in *Great Atl. & Pac. Tea Co. v. Paul, supra,* 256 Md. at 655, 261 A.2d at 738, that "[w]hatever technical distinction there may be between an 'arrest' and a 'detention' the test whether legal justification existed in a particular case has been judged by

94

the principles applicable to the law of arrest." *See also Ashton v. Brown*, 339 Md. 70, 120, 660 A.2d 447, 472 (1995); *Montgomery Ward v. Wilson*, 339 Md. 701, 721, 664 A.2d 916, 926 (1995); *Heron v. Strader, supra*, 361 Md. at 264–65, 761 A.2d at 59. Because both an arrest and a detention involve a deprivation of liberty, it is reasonable to apply a single standard or set of standards to determine whether, from the perspective of tort law, either is legally justified.

It is important to keep in mind, however, that the act of arrest is ordinarily a momentary event. In *Bouldin v. State*, 276 Md. 511, 515–16, 350 A.2d 130, 133 (1976), we defined an arrest as "the taking, seizing, or detaining of the person of another (1) by touching or putting hands on him; (2) or by any act that indicates an intention to take him into custody and that subjects him to the actual control and will of the person making the arrest; or (3) by the consent of the person to be arrested." In *State v. Evans*, 352 Md. 496, 514–15, 723 A.2d 423, 431–32 (1999), we stressed the immediate physical nature of the encounter and held that whether the officer has any intent that the seizure lead to a prosecution has no bearing on whether an arrest has occurred. Once the physical requirements for an arrest have been met along with the intent to seize and detain, the arrest is complete, and, although the person may remain "under arrest," the arrest thereafter becomes a continued detention.

This becomes important because the legal justification for the arrest based on the identity of the arrestee can dissipate over time. The detaining authority may come into possession of information, not known at the time of arrest or not known at some earlier point in the detention, which, by establishing that the person being detained is not, in fact, the person authorized to be detained, may cause the legal justification relating to identity to disappear. The standards used to determine legal justification remain the same, but, in the course of a continuing detention, their application needs to be reexamined whenever changes in the factual underpinning of their application become known. That, indeed, is what this case is all about.

■ The general rules regarding when an arrest is regarded as "privileged"—*i.e.*, legally justifiable so as to protect the person making the arrest (or imposing the detention) from liability for false imprisonment, are set forth in Chapter 5, Title B of the Restatement (Second) of Torts. Section 125, dealing with the arrest of the wrong person under a warrant, provides:

"An arrest under a warrant is not privileged unless the person arrested

(a) is a person sufficiently named or otherwise described in the warrant and is, or is reasonably believed by the actor to be, the person intended, or

(b) although not such person, has knowingly caused the actor to believe him so."

Of particular relevance here is § 125(a), which contains two requirements for privilege: (1) that the warrant sufficiently name or identify the person to be arrested; and (2) that the person arrested either be that person or that the arresting officer reasonably believe the arrestee to be that person.

In Comment c. to § 125, the American Law Institute concludes that a person is sufficiently named if both the first name and surname given in the warrant "are phonetically closely similar to such a person's name." The warrant satisfied that requirement; it noted the first and last names of Vanessa Hawkins and, as an alias, Evelyn Dett. The first requirement was thus clearly met as to Officer Moore. The situation with respect to CBIC and the Detention Center is a bit more ambiguous. The commitment order, although referencing the warrant by number, named only Vanessa Hawkins as the person to be detained and said nothing about Evelyn Dett, even as an alias. To meet the first requirement, the State defendants must show that they, like Officer Moore, relied upon the warrant, for that is the only authority to detain someone named Evelyn Dett.

Comment d. to § 125 addresses the second requirement. It states that "if there are two persons to whom the name

applies with complete accuracy or with substantially equal sufficiency [] the actor is privileged to arrest the one whom, after using due diligence, he reasonably believes to be the person intended." Comment f. expounds on this, noting that it is reasonable for the person charged with executing the warrant to rely on the name given in the warrant "unless he knows or is convinced beyond a reasonable doubt that a mistake has been made." Thus, the Comment continues, the actor is privileged to arrest the person to whom the name applies with complete accuracy even if the actor "may have some reason to suspect . . . that the person, though accurately named, is not the person intended" but is not privileged to arrest a person, though accurately named, "if the actor knows by his own senses, or has information which leaves him no room reasonably to doubt, that a mistake has been made." An example given is a warrant for the arrest of XYZ for wife-beating and the arrestee, XYX, is an unmarried 12–year–old child.

■ Although some courts, particularly in older cases, have adopted a strict view that an officer who arrests the wrong person, even one with the same name or general description as the person named in the warrant, is liable even if he or she acts in good faith, most courts have applied principles similar to those set forth in § 125 of the Restatement and have adopted instead a reasonable belief test. *See,* in general, William B. Johnson, *Liability for False Arrest Or Imprisonment Under Warrant As Affected By Mistake As To Identity Of Person Arrested,* 39 A.L.R.4th 705 (1985). The majority, and to us the better reasoned, view is that, where the warrant sufficiently names or identifies the person to be arrested and the arresting officer, despite some evidence to the contrary, reasonably believes that the person arrested, bearing that name, is the person named in the warrant, the officer is not liable for false imprisonment, even if he or she, in fact, arrests the wrong person.[4]

---

4.  *See Rodriguez v. United States,* 54 F.3d 41 (1st Cir.1995); *Schneider v. Kessler,* 97 F.2d 542 (3rd Cir.1938); *King v. Robertson,* 227 Ala. 378,

We are not concerned here with the conduct of Officer Moore, but of CBIC and the Detention Center. CBIC received Ms. Dett pursuant to either the warrant or the sheriff's commitment order. The commitment order, as noted, directed the commitment of Vanessa Hawkins, SID No. 381961, date of birth July 11, 1963, and said nothing about Evelyn Dett, SID No. 2413966, date of birth February 6, 1962. Although the warrant noted that Vanessa Hawkins was also known as Evelyn Dett, it contained no identifying information beyond that contained on the commitment order and, indeed, identified the subject of the warrant with the same SID number and date of birth that was contained on the commitment order.

Whether or not required by law to do so, CBIC has adopted a routine procedure for identifying persons placed directly in its custody—booking, photographing, fingerprinting, and obtaining from the fingerprints a SID number—and Ms. Dett was subjected to that process. Within two hours after receiving custody of Ms. Dett, CBIC was aware of and had made note of a problem—two SID numbers. It recognized and

150 So. 154 (1933); *Montgomery v. City of Montgomery,* 732 So.2d 305 (Ala.Civ.App.1999); *Boies v. Raynor,* 89 Ariz. 257, 361 P.2d 1 (1961); *Walton v. Will,* 66 Cal.App.2d 509, 152 P.2d 639, 641 (1944); *Stewart v. Williams,* 243 Ga. 580, 255 S.E.2d 699 (1979); *Rodriguez v. Kraus,* 275 Ga.App. 118, 619 S.E.2d 800 (2005); *Blocker v. Clark,* 126 Ga. 484, 54 S.E. 1022 (1906); *Smith v. Sheriff of Cook County,* 277 Ill.App.3d 335, 214 Ill.Dec. 20, 660 N.E.2d 211 (1995); *Barnes v. Wilson,* 450 N.E.2d 1030, 1033 (Ind.App.1983); *O'Neill v. Keeling,* 227 Iowa 754, 288 N.W. 887, 889–890 (1939); *Filer v. Smith,* 96 Mich. 347, 55 N.W. 999 (1893); *Boose v. City of Rochester,* 71 A.D.2d 59, 421 N.Y.S.2d 740 (1979); *Robinson v. City of Winston-Salem,* 34 N.C.App. 401, 238 S.E.2d 628, 631 (1977); *Golden v. City of Cleveland,* 51 Ohio App.3d 39, 554 N.E.2d 148 (1989); *State ex rel. Anderson v. Evatt,* 63 Tenn.App. 322, 471 S.W.2d 949, 950–51 (1971); *Mildon v. Bybee,* 13 Utah 2d 400, 375 P.2d 458 (1962); *Stalter v. Washington,* 151 Wash.2d 148, 86 P.3d 1159 (2004); *White v. Jansen,* 81 Wash. 435, 142 P. 1140 (1914); *Wallner v. Fidelity & Deposit Co.,* 253 Wis. 66, 33 N.W.2d 215 (1948).

For the contrary view, *see Wolf v. Perryman,* 82 Tex. 112, 17 S.W. 772 (1891) and *Clark v. Heard,* 538 F.Supp. 800 (S.D.Tex.1982) (holding that, under Texas law, the protection ordinarily allowed an officer who proceeds under a facially valid warrant does not apply to the arrest and detention of the wrong person and that such an arrest, even under a duly issued warrant, amounts to false imprisonment); *Jordan v. C.I.T. Corporation,* 302 Mass. 281, 19 N.E.2d 5 (1939).

recorded the fact that the existence of those two numbers would keep her from being released. By 11:30 the next morning, March 8, the SID No. 381961 for Vanessa Hawkins had been verified and CBIC was aware that Vanessa Hawkins had eight prior contacts with CBIC.

Viewing the evidence and all reasonable inferences from the evidence in a light most favorable to Ms. Dett, it may fairly be inferred that CBIC had files with respect to those contacts, files from which a photograph, fingerprints, and other identifying information pertaining to Vanessa Hawkins would likely have been available. Ms. Dett could have been promptly re-fingerprinted to make certain that her prints were accurately recorded and resubmitted for confirmation of a SID number. It is not clear from this record that any of that was promptly done. Had CBIC simply obtained the photograph and fingerprints of Vanessa Hawkins inferably in its possession, it would have known without question that the person it was holding was not the person named in the warrant or the commitment order.

The Restatement standard that we have adopted provides that a detention is not privileged unless the person detained "is reasonably believed by the actor to be the person intended [to be detained]." From the evidence we have recounted, viewed in a light most favorable to Ms. Dett, there is no question but that a jury could reasonably find that, as early as midmorning on March 8, and certainly by March 10, CBIC, and thus DPSCS, could no longer reasonably believe that the person it was holding as Vanessa Hawkins was the person named in the warrant and commitment order. *See Hayes v. Kelly*, 625 So.2d 628 (La.App.1993), *cert. denied*, 625 So.2d 628 (La.1994), *and cert. denied*, 633 So.2d 171 (La.1994); *Stalter v. Washington, supra*, 151 Wash.2d 148, 86 P.3d 1159.

■ Relying on CS § 5–202(c)(2) and *Glover v. State, supra*, 143 Md.App. 313, 794 A.2d 735, the State nonetheless insists that it had both the right and a mandate to hold Ms. Dett until ordered by the court to release her. That is not the case.

■■■■ Section 5–202(c)(2) directs the Commissioner to keep an inmate safely in custody "until the inmate is discharged in accordance with law." If the inmate being held is not the person *ordered* to be held, however, the law requires that person be discharged as soon as that fact becomes clear. The statute does not direct, and Constitutionally could not direct, the Commissioner to hold someone the Commissioner knows or reasonably believes is not the person authorized to be detained. As we indicated, CBIC and the Detention Center may have no common law or statutory duty to investigate whether a person committed to their custody is, in fact, the person authorized to be so committed, but once they become aware of facts that convince them that the person they are holding is *not* the person they are authorized by the warrant or commitment order to hold, they must, as promptly as reasonably possible, take the necessary steps, through the appropriate administrative structure, to release the person and notify the court or other agency that issued the warrant or other detention order (1) that they have done so, and (2) why.

In *Glover*, the plaintiff, James Glover, began serving a 30–day sentence at the Baltimore City Detention Center on October 4, 1996. The lawfulness of that detention was unchallenged. On October 18, 1996, the Baltimore City Sheriff filed a detainer, directing the warden of the Detention Center to hold James Glover, SID No. 991140962, date of birth 8/13/58, until further action of the Circuit Court for Baltimore City pursuant to Bench Warrant No. 896236002 for failure to appear for trial on a charge of unauthorized use. It is not clear whether a copy of the warrant was sent to the Detention Center; there was no copy of it in the record.

Glover protested that he was not the James Glover wanted for unauthorized use, but the Detention Center, acting pursuant to the detainer/commitment order, continued to detain him until December 4, 1996, when it produced him in court on the unauthorized use charge. The court determined that the James Glover detained pursuant to the sheriff's detainer was not, in fact, the James Glover wanted for failure to appear on

an unauthorized use charge and thus ordered his release. Glover then filed suit against the City and the State for negligence and a violation of Constitutional rights.

■ Glover did not dispute that he was, in fact, the person identified in the detainer—the SID number stated in the detainer, 991140962, was his SID number—and therein lies the critical difference. Glover's complaint was that the warrant and commitment order were incorrect, that they named the wrong person. It is ordinarily not for the arresting officer or jailer to determine whether the warrant or detainer calling for the arrest or detention of a particular person is valid, was lawfully issued, or properly named the person ordered to be arrested. Those are issues for the court to resolve. The problem here is not the validity of the warrant or commitment order directing the detention of Vanessa Hawkins "AKA" Evelyn Dett; it is that the individual detained was not that person and there is competent evidence to show that CBIC and the Detention Center knew that to be the case and yet continued to detain her for a significant period of time. The Court of Special Appeals was correct in concluding that summary judgment was inappropriate.

**JUDGMENT OF COURT OF SPECIAL APPEALS AFFIRMED, WITH COSTS.**