REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 547

September Term, 2013

---

VADIM ROSHCHIN ET AL.

v.

STATE OF MARYLAND ET AL.

---

Woodward,
Kehoe,
Hotten,

JJ.

---

Opinion by Kehoe, J.

---

Filed: August 29, 2014

*Arthur, J., did not participate in the Court's
decision to designate this opinion for publication
pursuant to Maryland Rule 8-605.1.

Appellants, Vadim Roshchin and his employer, American Sedan Service, Inc. ("American"), assert that the State of Maryland, through three of its agencies, the Maryland Transportation Authority ("MTA"), the Maryland Transportation Authority Police ("MTAP"), and the Maryland Aviation Administration ("MAA") (collectively, the "State"), orchestrated Roshchin's arrest and the temporary confiscation of a limousine owned by American. The basis for these actions was Roshchin's violation of a regulation requiring him to display a permit allowing him to pick up passengers from the Baltimore-Washington International Thurgood Marshall Airport (the "Airport"). According to appellants, the sanction for violating the regulation is a fine. Therefore, they assert, Roshchin's arrest and the confiscation of the vehicle were unlawful and tortious.

Appellants filed suit against the State asserting various common law and constitutional torts. The Circuit Court for Anne Arundel County granted the State's motion for summary judgment and appellants present four questions for our review, which we have consolidated and rephrased:

> I. Did the circuit court err in treating the relevant Airport regulation as valid and enforceable on the date of Roshchin's arrest?
>
> II. Did the circuit court err in granting summary judgment in favor of the State on all claims alleged by Roshchin and American?

For the reasons that follow, we will affirm the judgment of the circuit court in part, reverse it in part, and remand this case for further proceedings.

## BACKGROUND

*The Incident*

American operates a limousine service that regularly picks up arriving passengers (who have previously contracted for its services) from the Airport. In order to do so lawfully, a limousine service must obtain a permit from the MAA and the permit must be displayed in the vehicle while the pick-up is made.

On the evening of February 23, 2010, Roshchin arrived at BWI to pick up two customers who had previously arranged transportation from the airport. Roshchin was operating a limousine owned by American, his employer. American had obtained a valid permit for the type of vehicle operated by Roshchin but, on this particular night, Roshchin had left the permit in another of American's cars. Also on that night, unbeknownst to Roshchin, MTAP was conducting an enforcement initiative designed to curtail unauthorized commercial transportation operations at the airport. This initiative included the enforcement of COMAR § 11.03.01.05-1(A)(1), which is the regulation that requires display of the permit.[1] While Roshchin was waiting for his passengers, he was approached by MTAP Detective Kevin Ermer. Roshchin had neither a permit displayed on his vehicle nor physical possession of such a permit. Detective Ermer, in accordance with a MTAP protocol, proceeded to arrest Roshchin for violating the regulation and impounded the vehicle.

---

[1]The planning for the enforcement initiative was conducted by representatives of MTPA, the Airport, and the Anne Arundel County State's Attorney's Office. The record indicates that the Attorney General's Office did not participate.

2

Roshchin was held in a holding cell at the airport for several hours until his case was called before a District Court Commissioner. After the hearing, Roshchin was released on his personal recognizance. The Anne Arundel County State's Attorney's Office subsequently entered a *nolle prosequi* to the charge. The vehicle Roshchin had been operating at the time of his arrest remained in the impound lot for about an hour and a half before being retrieved by Vladimir Segel, the owner of American.

*The Circuit Court Proceedings*

In February, 2012, Roshchin and American filed suit against the State, alleging in their complaint three counts arising out of Roshchin's arrest (false arrest, false imprisonment, and a violation of the rights guaranteed by Article 24 of the Declaration of Rights), and two counts arising out of the impoundment of the vehicle Roshchin was operating (trespass to chattels and tortious interference with business relations).

The parties eventually filed competing motions for summary judgment. In their motion, Roshchin and American asserted that a partial judgment should be granted in their favor because "a violation of COMAR [§] 11.03.01.05-1(A)(1) is not an incarcerable offense pursuant to the unambiguous language of the enabling statutes." Instead, according to Roshchin and American, Detective Ermer was authorized only to issue a citation to Roshchin for his violation of the regulation.

The State contended that judgment in its favor was appropriate as to the counts arising out of Roshchin's arrest because Detective Ermer's actions were supported by probable

3

cause, were legally justified, and did not otherwise violate Roshchin's Article 24 rights. Similarly, the State maintained that judgment in its favor was appropriate as to the counts arising out of the impoundment of American's vehicle because Roshchin, the driver, had been properly arrested and impoundment of the vehicle was thereafter necessary in order to preserve public safety at the airport terminal.

In response to the State's motion, Roshchin and American argued that there was a genuine dispute of material fact as to whether COMAR § 11.03.01.05-1(A)(1) was an enforceable regulation on the night of Roshchin's arrest because the record evidence was unclear as to whether the regulation had been "posted conspicuously in a public place" at BWI pursuant to the relevant statutory requirements.

After a hearing on the motions, the circuit court issued a written opinion and order granting summary judgment in favor of the State on all counts. With respect to the counts raised by Roshchin, the circuit court concluded that, while Detective Ermer could have issued a citation to Roshchin for violating COMAR § 11.03.01.05-1(A)(1), the relevant statutory and regulatory provisions did not restrict the officer's authority to place Roshchin under arrest. Turning to the undisputed facts, the court concluded that Detective Ermer's arrest of Roshchin was proper because: one, Roshchin's violation of the regulation constituted a misdemeanor under the relevant provisions of the Transportation Article; and, two, Roshchin committed the offense in the presence of the Detective.

With respect to the counts raised by American, the circuit court concluded that

4

judgment was appropriate on the trespass to chattels count because the State had "the authority to impound [American's] vehicle in order to permit the uninterrupted flow of traffic and decrease the risk of any accidents occurring at BWI," and on the count for tortious interference with business relations because Roshchin "was lawfully arrested by Detective Ermer, and American's vehicle was lawfully impounded."

This appeal followed.

## Analysis

We review the circuit court's grant of summary judgment *de novo*, *Harford County v. Saks Fifth Ave. Distrib. Co.*, 399 Md. 73, 82 (2007), determining, first, whether there exists a dispute as to any material fact and, second, whether the court was legally correct. *Lombardi v. Montgomery County*, 108 Md. App. 695, 710 (1996). In making this determination, we consider the facts in the record "'in the light most favorable to the non-moving part[y].'" *Georgia-Pacific Corp. v. Benjamin*, 394 Md. 59, 74 (2006) (quoting *Sadler v. Dimensions Healthcare Corp.*, 378 Md. 509, 533-34 (2003)). "Even if it appears that the relevant facts are undisputed, if those facts are susceptible to inferences supporting the position of the party opposing summary judgment, then a grant of summary judgment is improper." *Id*. The "purpose of the summary judgment procedure is not to try the case or to decide the factual disputes, but to decide whether there is an issue of fact, which is sufficiently material to be tried." *Id*.

## I. The Relevant Statutory and Regulatory Provisions

The contentions raised by Roshchin and American lie at the intersection of three provisions—two statutory and one regulatory—which we set out in pertinent part. The regulatory provision is COMAR § 11.03.01.05-1. It provides:

> A. General Provisions
> (1) Except [as otherwise provided], a commercial vehicle or courtesy vehicle may not conduct business at [BWI] Airport unless a permit is first obtained from the Administration and displayed as provided in these regulations.
> (2) ***
> (3) A permit shall be displayed on an area of the vehicle designated by the Administration.
> ***
> C. Prohibited Acts. While conducting commercial activity under a permit, a permit holder or its authorized operator may not:
> ***
> (5) Fail to display a currently valid permit on an area of the vehicle designated by the Administration

There is no dispute that Roshchin violated this provision by failing to possess and display a valid permit on the night of his arrest.

COMAR § 11.03.01.05-1 was adopted pursuant to Md. Code (1977, 2008 Repl. Vol.) § 5-426 of the Transportation Article ("TA"). That section states:

> (a) *Regulations Authorized.* — After holding a public hearing, the governing body of any publicly owned airport in this State may adopt regulations for:
> ***
> (3) Safety at the airport;
> ***
> (B) *Posting.* — All regulations adopted under this section shall be posted conspicuously in a public place at the airport.

TA § 5-427(b) is also important. It provides that, "Any person who violates any . . .

regulation adopted and posted under § 5-426 of this subtitle is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $500."

Roshchin asserts that COMAR § 11.03.01.05-1 was not valid and enforceable on the night of his arrest because it had not been properly posted pursuant to TA §§ 5-426(b) and 5-427(b). Roshchin also identifies several reasons as to why, in his view, these subsections did not authorize Detective Ermer to arrest him for violating COMAR § 11.03.01.05-1. We will address these contentions in Parts II and III.

We conclude that the circuit court erred in granting judgment in favor of the State on Roshchin's and American's common law tort claims. However, we will affirm the court's grant of summary judgment on Roshchin's claim based upon the State's alleged violation of Article 24.

As we will explain, the existence of probable cause for the arrest in this case explains the disparate results. Roshchin's claim that his rights protected by Article 24 were violated by his arrest fails because Detective Ermer had probable cause to believe that Roshchin had committed a misdemeanor in his presence. The Supreme Court has held that, in terms of arrests, the Fourth Amendment's protection extends only to arrests made without probable cause. Maryland courts have construed analogous state constitutional protections as providing the same protections as the Fourth Amendment and we hold that, because there was probable cause, Roshchin's rights guaranteed by Article 24 were not violated.

The false arrest/false imprisonment claims are a different matter. A defendant may be

7

liable for false arrest or false imprisonment if the arrest, or the continued detention, is made without legal authority. An arrest made without probable cause is without legal authority. But, as this case illustrates, under certain circumstances, an arrest can be without legal authority even if the arresting officer has probable cause. Dectective Ermer was without legal authority to arrest Roshchin because a statute limited his otherwise extant discretion to do so.[2]

## II. The Posting Requirement

Roshchin asserts that summary judgment was inappropriate because there exists a dispute of fact as to whether notice of COMAR § 11.03.01.05-1 was posted at BWI in accordance with TA § 5-426(b) on the night of his arrest. In support, Roshchin points to his own affidavit, as well as to the deposition and/or affidavit testimony of Mr. Segel (the owner of American), Detective Ermer (the arresting officer), Sergeant Urban (another MTAP

---

[2]To the extent that there is an anomaly in the two results, the reason lies in the differing interests protected by common law tort actions and constitutional tort actions:

> The purpose of a negligence or other ordinary tort action is not specifically to protect individuals against government officials or to restrain government officials. The purpose of these actions is to protect one individual against another individual, to give one person a remedy when he is wrongfully injured by another person. * * *
>
> On the other hand, constitutional provisions like Articles 24 or 26 of the Maryland Declaration of Rights, or Article III, § 40, of the Maryland Constitution, are specifically designed to protect citizens against **certain** types of unlawful acts by government officials.

*Ashton v. Brown*, 339 Md. 70, 105 (1995) (emphasis added; citations and quotation marks omitted).

8

officer), and Stephen Moe (the Manager of Transportation and Parking for MAA). These witnesses averred, in essence, that none of them observed any postings related to COMAR § 11.03.01.05-1 while at the airport on or around the night in question. We agree with Roshchin that, based on the testimony of these witnesses, sufficient inferences exist to establish a dispute of fact as to whether COMAR § 11.03.01.05-1 was properly posted at BWI on the night of his arrest.

The State argues that TA § 5-426(b)'s posting requirement is not a prerequisite to the regulation's enforceability, and in support of this proposition cites to *Columbia Citizens' Ass'n v. Montgomery County*, 98 Md. App. 695, 701 (1994) ("The lack of any sanction in the statute or provision tends to militate towards a finding that the statute or provision is directory."); and *Harvey v. State*, 51 Md. App. 113, 116 (1982) (same). The State is correct that § 5-426 itself does not state whether a failure to post affects the enforceability of a regulation promulgated under its aegis. However, TA § 5-427(b) states (emphasis added):

§ 5-427. Penalties.

(a) Parking Regulations. — Any person who violates a parking regulation **adopted and posted under § 5-426** of this subtitle is subject to a fine not exceeding $50. A violation of a parking regulation is not a misdemeanor.

(b) Rules and Regulations Generally. — Any person who violates any other rule or regulation **adopted and posted under § 5-426** of this subtitle is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $500.

The two statutes should be read together. *See, e.g., M-NCPPC v. Anderson*, 395 Md. 172, 183 (2006) ("[W]hen two statutes appear to apply to the same situation, this Court will

attempt to give effect to both statutes to the extent that they are reconcilable." (quotation marks and citations omitted)). When this is done, in our view, the plain language makes it clear that a regulation must be "adopted and posted" before a person can be held responsible for its violation.[3] And, as established above, there exists a dispute of fact as to whether the regulation was properly posted on the night of Roshchin's arrest.

The State also asserts that it is undisputed that Roshchin had actual knowledge of the regulation and that he knew on the night of his arrest that he needed to display the permit on the vehicle he was operating. The State cites cases such as *United States v. Bichsel*, 395 F.3d 1053, 1056 (9th Cir. 2005), and *United States v. Davis*, 339 F.3d 1223 (10th Cir. 2003), to support its argument that "the [appellants'] actual notice of the MAA regulations rendered Mr. Roshchin's arrest valid." The State's argument might be persuasive if it were presented

---

[3]The State makes two additional arguments. First, it asserts that the statutory history of what is now TA § 5-426 indicates that:

> [Section] 5-426 provides the authority to adopt regulations independent of the requirement subsequently to post them. Had posting been a prerequisite to the regulations' efficacy, the General Assembly would have recited that requirement, just as it had in the earlier iteration of the same law.

The simple answer is that the statutory provision making posting a precondition to enforcement is now found in TA § 5-427.

Second, the State points out that the regulations in question are posted on the Airport's website and posits that posting on-line is "arguably a more effective method of notice than posting a set of regulations at a location inside the airport not frequented by those [such as Roshchin] who would ordinarily remain in the garage or on outside lanes of travel when discharging and picking up passengers." But the General Assembly's intent that the regulations be physically posted at the Airport is manifest.

10

in a hypothetical criminal prosecution to counter a contention that the failure to post was a defense. But we are not dealing with that scenario. Appellants do not contest that Roshchin violated the regulation, but rather assert that Detective Ermer had no authority to arrest him or to impound the limousine. We turn now to those contentions.

### III. Roshchin's Arrest

### 1. The Article 24 Claim

Article 24 states, "That no man ought to be taken or imprisoned or disseized of his freehold, liberties or privileges, or . . . in any manner, destroyed, or deprived of his life, liberty, or property, but by the judgment of his peers, or by the Law of the Land." Roshchin's Article 24 claim is "premised on a deprivation of liberty without legal justification." *State v. Dett*, 391 Md. 81, 92 (2006). Such claims are often asserted under Article 26, which protects against unreasonable searches and seizures, and not Article 24, which guarantees due process rights. *See Randall v. Peaco*, 175 Md. App. 320, 330 (2007) (Article 24 is "Maryland's analogue to the Fourteenth Amendment" while Article 26 is "Maryland's analogue to the Fourth Amendment"). Neither the circuit court's opinion nor the parties' arguments focus on the differences between the two Articles.

There is a dearth of Maryland cases on the subject of whether an arrest in circumstances similar to those at issue in this case raises an Article 24 claim, as opposed to a claim under Article 26. What is clear, however, is that there exist scenarios where the rights protected by Articles 24 and 26 overlap. Under such circumstances, courts apply the same

11

standards in assessing alleged violations of each article. *See, e.g., Williams v. Prince George's County*, 112 Md. App. 526, 547 (1996) (in certain contexts, "the essential analysis . . . is the same under Articles 24 and 26 of the Maryland Constitution as that under the Fourth Amendment to the United States Constitution").

In light of the aforesaid observations, and because it is clear that Roshchin's Article 24 claim is based on an alleged arrest without proper justification, we will apply the same standard in assessing this claim as is applicable to an alleged violation of the Fourth Amendment to the United States Constitution. *Cf. Dett,* 391 Md. at 92; *Randall,* 175 Md. App. at 330; *Williams*, 112 Md. App. at 547.

In *Atwater v. City of Lago Vista*, the United States Supreme Court explained that, under the Fourth Amendment, the applicable standard is one of probable cause:

> the standard of probable cause "applies to all arrests, without the need to 'balance' the interests and circumstances involved in particular situations." If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender.

532 U.S. 318, 121 S.Ct. 1536, 1557 (2000); *see also Virginia v. Moore*, 553 U.S. 164, 174-77 (2008); *Davenport v. Alford*, 543 U.S. 146, 153-56 (2004); *Wilkes v. State*, 364 Md. 554, 587 n.23 (2001); *DiPino v. Davis*, 354 Md. 18, 43-44 (1999).

Because we read Article 24 and the Fourth Amendment as providing essentially the same protections on the facts before us, it is clear that Roshchin's arrest did not violate the rights guaranteed him by Article 24 (or Article 26, for that matter) because the police officer

12

had probable cause to believe that Roshchin had committed a misdemeanor. Roshchin does not challenge the circuit court's conclusion on this point and, if he did, such a challenge would be futile. *See Smithfield Packing Co. v. Evely*, 169 Md. App. 578, 603 (2006) ("'We have defined probable cause as facts and circumstances sufficient to warrant a prudent person in believing that the suspect had committed or was committing an offense.'" (quoting *Okwa v. Harper*, 360 Md. 161, 183-84 (2000) (brackets omitted)); *see also DiPino*, 354 Md. at 32-33 (discussing the nature of probable cause); *Hines v. French*, 157 Md. App. 536, 550-53 (2004) (same).

## 2. The False Arrest and False Imprisonment Claims

False arrest and false imprisonment share identical elements. *Prince George's County v. Longtin*, 419 Md. 450, 506 (2011). Both require a showing of the "deprivation of the liberty of another without his consent and without legal justification." *Dett*, 391 Md. at 92. On these facts, Roshchin did not consent to his arrest, so the pertinent question before us is whether Detective Ermer possessed legal justification to arrest him. "The test of legal justification, in the context of false arrest and false imprisonment, is judged by the principles applicable to the law of arrest." *Heron v. Strader*, 361 Md. 258, 264 (2000) (citations omitted). In other words, legal justification in this context is "'equivalent to legal authority.'" *Montgomery Ward v. Wilson*, 339 Md. 701, 721 (1995) (quoting *Aston*, 339 Md. at 120). Where, as here, the alleged deprivation involves an arrest by a law enforcement officer, the officer cannot be held "'liable for [false arrest or] false imprisonment in connection with that

arrest if [he or she] had legal authority to arrest under the circumstances.'" 339 Md. at 721

(citing, among other authorities, *Great Atl. & Pac. Tea Co. v. Paul*, 256 Md. 643, 654

(1970)).

Roshchin argues that, under TA § 5-427(b), "a violation of [a regulation promulgated

under that section] is a misdemeanor with a maximum penalty of a fine not exceeding

$500.00." This language, according to Roshchin, means that "[§] 5-427(b) does not authorize

the arrest or incarceration of an alleged violator of COMAR § 11.03.01.05-1"—in other

words, "a violation of [the regulation] is a non-incarcerable offense as a matter of law." He

maintains that this interpretation is reinforced by TA § 5-1104 and CP § 2-201(b) (which we

will discuss below).

In granting summary judgment, the circuit court relied on Md. Code (2001, 2008 Repl.

Vol.) § 2-202 of the Criminal Procedure Article ("CP"), which provides:

> (a) *Crimes committed in presence of police officer.* — A police officer may
> arrest without a warrant a person who commits or attempts to commit a felony
> or misdemeanor in the presence or within the view of the police officer.
>
> (b) *Probable cause to believe crime committed in presence of officer.* — A
> police officer who has probable cause to believe that a felony or misdemeanor
> is being committed in the presence or within the view of the police officer may
> arrest without a warrant any person whom the police officer reasonably
> believes to have committed the crime.

The circuit court reasoned that, because Roshchin's violation occurred in the presence

of Detective Ermer and was "classified as a misdemeanor" under the Transportation Article,

it was "in [the Detective's] capacity to arrest [him]." The court alternatively determined that

14

Detective Ermer had the authority to make the arrest because the Detective "had probable cause that [Roshchin] was violating COMAR § 11.03.01.05-1 when [Roshchin] failed to produce the required MAA permit." These observations, in the circuit court's view, established that Detective Ermer's arrest of Roshchin was lawful. Our reading of the pertinent statutes leads us to a different conclusion.

TA § 5-1104 provides, in relevant part (emphasis added):

(a) *Issuance of citation.* — If a person is apprehended by a police officer for the violation of any provision of this title that is punishable as a misdemeanor or for the violation of any rule, regulation, or order adopted under this title that is punishable as a misdemeanor, the officer **shall** prepare and sign a written citation.

(b) *Contents of citation.* — The citation shall contain:
    (1) A notice to the person charged to appear in court;
    (2) The name and address of the person charged;
* * * *
    (4) The offense charged;
    (5) The time and place the person charged is required to appear in court;
    (6) A form for the written promise of the person charged to appear in court; and
    (7) Any other necessary information.

(c) *Written promise to appear.* — The person charged may give his written promise to appear in court by signing the form for written promise on the citation prepared by the police officer. In this event, the officer **need not** take the person into physical custody for the violation **unless**:
    (1) The person charged does not furnish satisfactory evidence of identity; or
    (2) The officer has reasonable grounds to believe the person charged will disregard a written promise to appear.
****

At this point in our analysis, certain well-established principles of statutory

construction come into play. The first is that "[w]here statutes relate to the same subject matter, and are not inconsistent with each other, they should be construed together and harmonized where consistent with their general object and scope." *Gwin v. Motor Vehicle Admin.*, 385 Md. 440, 462 (2005) (citations omitted). The second is that "when two statutes appear to apply to the same situation, this Court will attempt to give effect to both statutes to the extent that they are reconcilable." *M-NCPPC v. Anderson*, 395 Md. at 183 (quotation marks and citations omitted). The third is that "[w]hen the Legislature commands that something be done, using words such as 'shall' or 'must' rather than 'may' or 'should,' the obligation to comply with the statute or rule is mandatory." *Perez v. State*, 420 Md. 57, 63 (2011).

Applying TA § 5-1104 to the facts at bar, we conclude that subsection (a) mandates the use of a citation. But Detective Ermer did not issue or attempt to issue a citation—he had been instructed by his supervisor to arrest persons who failed to display the required permit. To be sure, TA § 5-1104(c) authorizes an officer to effect an arrest, but only under limited circumstances: if the person charged fails to provide proof of identity or the officer has a reasonable basis to conclude that the person charged will not appear in court. Neither scenario was implicated in this case.

For us to accept the interpretation posited by the State—that CP § 2-202 vested Detective Ermer with an inherent discretion to make an arrest—would require us to disregard the mandatory language in TA § 5-1104(a). We decline to do so. *See Fisher v. Eastern Corr.*

16

*Inst.*, 425 Md. 699, 709–10 (2012) ("[V]arious statutory provisions covering the same subject matter are to be construed, if at all possible, so that together the sections harmonize with one another and no section is rendered nonsensical or nugatory."). In other words, when we read CP § 2-202 in conjunction with TA § 5-1104, we conclude that the general grant of authority in CP § 2-202 must yield to the specific limitations in TA § 5-1104. Based on the record before us, Detective Ermer was without authority to arrest Roshchin. The circuit court erred in granting summary judgment to the State on Roshchin's claims for false arrest and false imprisonment.

## IV. The Claims of American Sedan

American alleged two counts arising out of the impoundment of the vehicle Roshchin was operating: trespass to chattels and tortious interference with business relations. The circuit court concluded that judgment was appropriately granted in favor of the State on both of these counts. We have determined that the circuit court's grant of summary judgment in favor of the State on the counts alleged by Roshchin was premised on the erroneous conclusion that Detective Ermer was authorized to arrest Roshchin for his violation of the regulation. The circuit court's entry of judgment on the counts alleged by American was likewise premised on this same conclusion.

Accordingly, we affirm the circuit court's judgment as to Mr. Roshchin's Article 24 claim but otherwise reverse the judgment and remand this action to the circuit court for further proceedings.

17

We are aware that there is a substantial public safety basis for the Airport's requirement that limousine services obtain and display permits. At the same time, however, we cannot ignore what we believe to a clear manifestation of legislative intent.

**THE JUDGMENT IS AFFIRMED AS TO COUNT III (VIOLATION OF ARTICLE 24 OF THE MARYLAND DECLARATION OF RIGHTS). THE JUDGMENT IS OTHERWISE REVERSED. THIS ACTION IS REMANDED TO THE CIRCUIT COURT FOR ANNE ARUNDEL COUNTY FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

**APPELLEES TO PAY 80% OF THE COSTS; APPELLANTS TO PAY 20%.**